**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VERSAR ENVIRONMENTAL SERVICES, LLC | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. _____ |
| | : | |
| | : | |
| BLACK & VEATCH SPECIAL PROJECTS CORP. | : | |
| | : | |
| Defendant. | : | |

## **COMPLAINT**

Plaintiff, Versar Environmental Services, LLC ("Versar Environmental"), by undersigned counsel, files this Complaint against Defendant Black & Veatch Special Projects Corp. ("BVSPC") arising out of BVSPC's false representations of material fact, and intentional omissions of material facts, made in furtherance of BVSPC's fraudulent scheme to induce Versar Environmental into purchasing BVSPC's Environmental Business Unit known as Project Evergreen, and in the alternative for Breach of Contract and Indemnification.

## **INTRODUCTION**

1.    On June 21, 2021, BVSPC sold its Environmental Business Unit, called Project Evergreen, to Versar Environmental pursuant to an Asset Purchase Agreement ("APA").

2.    The APA was executed on behalf of BVSPC by Randal Castro as President for BVSPC.

3.    As part of the APA, BVSPC[1] made representations and warranties concerning the operational, financial, and legal condition of Project Evergreen's on-going projects, including

---

[1] As used herein the knowledge attributed to "BVSPC" is inclusive of the knowledge parties referenced in Article 3 of the APA.

Project Evergreen's largest project, known as the "Chem Fab Superfund Site" ("Chem Fab")[2], an environmental remediation project for the Environmental Protection Agency and administered by the United States Army Corps of Engineers ("USACE") [3].

4.      According to BVSPC, Project Evergreen was a well-regarded and successful full-service environmental business unit, which held numerous profitable federal contracts, and had strong opportunities to bid for future contracts, worth millions of dollars.

5.      BVSPC is also a division and wholly owned subsidiary of Black & Veatch.

6.      For reasons that are unknown, BVSPC decided to sell Project Evergreen and market it to potential buyers.

7.      One of these potential buyers, a company looking to expand its federal contracting and environmental services business, was Versar Environmental.

8.      Versar Environmental believed or, more accurately, BVSPC induced Versar Environmental into believing, that purchasing Project Evergreen, including Chem Fab and the other projects under the Project Evergreen umbrella, was the way to accomplish that goal. BVSPC's representations to Versar Environmental were based upon Chem Fab's supposedly significant value and profitability as well as Project Evergreen's purportedly assured prospects for future business.

9.      However, BVSPC's promises and representations to Versar Environmental about Project Evergreen, the conditions of its projects, its finances, and its future business prospects were false, intentionally misleading, and part of a fraudulent scheme to sell Project Evergreen, an unprofitable and financially calamitous business, to Versar Environmental.

_____

[2] The Chem Fab project remains ongoing as of the date of this Complaint.
[3] Throughout the Complaint, the EPA and USACE are referred to collectively as "the Government."

10. As explained below, unbeknownst to Versar Environmental at the time of purchase, Project Evergreen was a disastrous business with its largest and, purportedly, most lucrative contract, Chem Fab, in operational, financial, and legal disarray.

11. BVSPC deliberately misled Versar Environmental by intentionally and falsely representing that certain financial statements (i.e., Profit & Loss Statement and Estimated Closing Balance Sheet) disclosed during due diligence were GAAP[4] compliant notwithstanding that the underlying financial data upon which those statements were based materially misrepresented the actual financial condition of Project Evergreen.

12. BVSPC intentionally and falsely represented that Project Evergreen, as of the second fiscal quarter of 2021, months before closing on the transaction, had a project gross margin ("PGM") of $690,397.00.

13. On Chem Fab, specifically, BVSPC further intentionally and falsely represented that Chem Fab's estimated cost at completion ("EAC") was $5,688,048.00 with a project gross margin of $1,279,738.00.

14. BVSPC also intentionally withheld from Versar Environmental that Chem Fab was experiencing substantial cost overruns due to a multitude of issues including, but not limited to, deficient and non-compliant construction, subcontractor disputes, disagreements with the Government, and substantial unexcused delays.

15. In fact, not only did BVSPC fail to disclose the existence of material disputes over the performance of one of its key subcontractors on Chem Fab, but, inexplicably, BVSPC also failed to disclose the Government's numerous notices of material deficiencies that it sent to BVSPC *about BVSPC's* deficient performance on Chem Fab.

---

[4] "GAAP" is an acronym for Generally Accepted Accounting Principles.

16.     During what BVSPC led Versar Environmental to believe was a comprehensive and honest due diligence process, BVSPC misrepresented Chem Fab's operational, financial, and legal status as part of a scheme by BVSPC to offload what it knew would prove to be an unprofitable environmental business unit and to leave Versar Environmental unwittingly holding the bag.

17.     The scope of Chem Fab was, among other things, to install, operate, and maintain a groundwater extraction and treatment system to extract and treat contaminated groundwater and, ultimately, to repair the site.

18.     The Chem Fab contract, which included a "base period" and three "option periods", was initially bid and contracted at a total amount of around $9 million, including the option periods.

19.     BVSPC also stated that if Versar Environmental purchased Project Evergreen, there was additional future business in the Project Evergreen "pipeline" as well, namely four federal contracts from USACE Kansas City named: (1) Valley Park; (2) LCP Chemical; (3) Gowanus Canal; and (4) Combe Fill South (collectively known as the "USACE Kansas City Projects").

20.     BVSPC stated that by purchasing Project Evergreen, Versar Environmental would now be able to bid for these future projects, which, according to BVSPC, had a total planned value of $500,000.00, $1 million, $18 million, and $25 million respectively.[5]

21.     As a result of BVSPC's representations about Project Evergreen, Chem Fab, and its positive future business prospects, Versar Environmental expressed its interest to BVSPC in purchasing Project Evergreen.

22.     Shortly thereafter, the parties began due diligence, which included a requirement

---

[5] "Gowanus Canal" refers to the Gowanus Canal Superfund site in Brooklyn, New York. "Valley Park" refers to the Valley Park TCE Superfund site in Valley Park, Missouri. "Combe Fill South" refers to the Combe Fill South Landfill Superfund site in Chester Township, New Jersey. "LCP Chemical" refers to the LCP Chemicals Superfund Site in Linden, New Jersey.

that BVSPC provide Versar Environmental with true and accurate documents, current and GAAP compliant financial statements, including an accurate Profit & Loss Statement and Estimated Closing Balance Sheet, and any other material information related to the operational, financial, and legal status of all of Project Evergreen's current contracts—including Chem Fab.

23.    Due diligence also required BVSPC to provide Versar Environmental with true and accurate information about Project Evergreen's expected future business, including the USACE Kansas City Projects.

24.    Throughout due diligence, BVSPC represented to Versar Environmental that all the Project Evergreen projects, including Chem Fab specifically, were generally on schedule, with Chem Fab experiencing only minor delays, that they would be profitable, that there were no ongoing performance or legal disputes between BVSPC and the Government or any subcontractor, and that each project was being performed according to the required specifications.

25.    At all times relevant hereto, Versar Environmental reasonably relied upon BVSPC's representations during due diligence.

26.    Black & Veatch is one of the most well-known, well-regarded, and highest earning contractors in the United States.

27.    In 2022, Black & Veatch ranked 46th on the Engineering News Record's List of Top 400 Contractors, including third in the nation in the "water/sewage/waste" category.

28.    As a result, Versar Environmental reasonably relied upon BVSPC to provide accurate, honest, and trustworthy information during due diligence about anything and everything having to do with Project Evergreen.

29.    On June 21, 2021, based upon BVSPC's representations during due diligence, Versar Environmental agreed to a purchase price for Project Evergreen of $4,000,000.00.

30. BVSPC's representations about Chem Fab, its status and condition, and future business in the "pipeline" all factored into the final purchase price.

31. As explained in detail below, after Closing[6] on Project Evergreen, it became apparent to Versar Environmental that BVSPC was dishonest and that it misrepresented and intentionally withheld material information about Project Evergreen to induce Versar Environmental into purchasing what BVSPC knew was, and would continue to be, a financially unsuccessful business unit.

32. Contrary to BVSPC's representations to Versar Environmental during due diligence, there were not just minor scheduling delays with Chem Fab. Unbeknownst to Versar Environmental at or before Closing, and despite BVSPC previously stating otherwise, Chem Fab was more than three (3) months behind schedule with no chance of catching up to the contractual schedule. In fact, due to the undisclosed material deficiencies, completion of the project was ultimately delayed by approximately two (2) years.

33. After Versar Environmental completed the acquisition of Project Evergreen, Versar Environmental obtained access to certain email records for the BVSPC employees who transferred to Versar Environmental. The information contained in these emails was clearly material to Chem Fab's condition and the status of other "pipeline" work; however, the emails and, more importantly, the information they contained were not made available to Versar Environmental at any time during due diligence and prior to Closing.

---

[6] "Closing" is June 21, 2021, the date of execution of the APA, as defined in Section 2.1 of the APA.

34.    Unbeknownst to Versar Environmental prior to Close, and according to BVSPC's own staff who worked on Chem Fab, the project was a "fire drill" and a "dumpster fire" from the start due to, *inter alia*, BVSPC's failure to adhere to its own internal practices and procedures for bidding on new work.

35.    As explained above, this was because of BVSPC's delayed mobilization on Chem Fab, its ongoing disputes with its main subcontractor on the project, Product Recovery Management, Inc. ("PRM") about the timeliness and quality of its work, and its disputes with the Government from which it had already received at least three serial letter notices for deficient work and designs.

36.    BVSPC also intentionally disregarded its corporate bidding practices to win Chem Fab at all costs.

37.    As a consequence, and unbeknownst to Versar prior to closing on the transaction, BVSPC lacked the contract funding and budget to complete Chem Fab's scope of work and deliverable requirements when it sold the project to Versar Environmental.

38.    Additionally, as Versar Environmental determined after purchasing Project Evergreen, BVSPC failed to provide Versar Environmental with up-to-date, GAAP compliant financial information for both Chem Fab and all of Project Evergreen.

39.    Again, with respect to all of Project Evergreen, BVSPC provided both a Profit & Loss Statement and an Estimated Closing Balance Sheet that intentionally, and fraudulently, misrepresented and inflated Project Evergreen's revenue, PGM, earnings before tax ("EBT"), and contract assets by approximately $2.5 million each.

40.    As a result, the inflated EBT would have had a 20-30 times negative impact on the basis of the investment in Project Evergreen and the associated enterprise value. In addition, due

to the lack of appropriate GAAP treatment of the Project, the result was an overstatement of the assets of Project Evergreen by $2.5 million.

41.    BVSPC, including BVSPC management, knew that the revenue, PGM, and EBT for Project Evergreen that it provided to Versar Environmental on its financial statements during due diligence was false and inflated. But BVSPC provided it anyway to cover up Chem Fab's condition and to induce Versar Environmental into purchasing Project Evergreen.

42.    The same goes for financial information about Chem Fab, specifically. Despite the avalanche of problems with Chem Fab, which are documented in detail throughout this Complaint, BVSPC continually represented to Versar Environmental that the EAC for Chem Fab was $5,688,048.00 with a positive "expected" PGM of $1,279,738.00.

43.    Not only were both the Chem Fab EAC and PGM that BVSPC provided during due diligence wrong, but BVSPC, including management, knew they were wrong based on the information known to BVSPC, but that it did not share, prior to Close.

44.    BVSPC's internal emails, specifically those of their own employees who worked on the project, reveal that BVSPC knew Chem Fab was in a disastrous state and would not be profitable.

45.    Due to the litany of documented problems on Chem Fab that existed at the time of Closing, it was impossible, and BVSPC knew it was impossible, for Chem Fab to meet the EAC and PGM that it provided during due diligence.

46.    The truth is that rather than an EAC of $5,688,048.00 for Chem Fab's duration, as BVSPC represented throughout due diligence, the true EAC to complete Chem Fab is approximately $14.6 million—resulting in a substantial financial loss.

47.    Moreover, rather than a PGM for Chem Fab of $1,279,738.00, the actual PGM is a

loss estimated to be approximately $4,460,000.

48.    Therefore, BVSPC's Profit & Loss Statement and Estimated Closing Balance Sheet were misrepresented and overstated because, in violation of GAAP, BVSPC failed to initiate a reserve for the cost overruns on Chem Fab, thereby, falsely depicting Chem Fab as a profitable project.

49.    Quite simply, BVSPC both misrepresented that the financial statements it disclosed were consistent with GAAP and it intentionally failed to provide Versar Environmental with an accurate accounting of Chem Fab's financial condition at the time of the sale.

50.    Additionally, as Versar Environmental learned after Close, there were no future projects in the "pipeline" coming from USACE Kansas City, as BVSPC represented.

51.    In reality, BVSPC had already bid on the four USACE Kansas City projects that it identified as being in the "pipeline."  It lost each of those bids prior to Closing.

52.    Again, Versar Environmental purchased Project Evergreen, in large part, because of the opportunity to bid on USACE Kansas City Projects, which would have generated substantial contract work and revenue.  It is now clear that, contrary to BVSPC's representations during due diligence, Versar Environmental could never have bid for these projects because BVSPC had already bid for them and lost.

53.    Now, Versar Environmental knows that BVSPC made numerous misrepresentations about Project Evergreen and its largest contract, Chem Fab, to offload a "slow-moving disaster" onto an unwitting buyer.

54.    But for BVSPC's fraudulent misrepresentations and active concealments during due diligence about Chem Fab, Versar Environmental would never have executed the APA to purchase Project Evergreen.

55.     However, Versar Environmental, to its detriment, reasonably relied upon the information supplied by BVSPC during due diligence and before Closing and purchased Project Evergreen; thereby incurring substantial damages as a result.

## PARTIES

56.     Versar Environmental is a limited liability company domiciled in, registered to do business in, and that regularly does business in, the State of Delaware.

57.     Black & Veatch Special Projects Corp. is a Missouri corporation with its principal place of business located at 11401 Lamar Avenue, Overland Park, Kansas 66211.

58.     Black & Veatch Special Projects Corp. is licensed to do business in, and regularly does business in, the State of Delaware.

## JURISDICTION AND VENUE

59.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) over the causes of action against BVSPC, as the amount in controversy exceeds $75,000.00 and the parties are all citizens of different states.

60.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this matter occurred in this District.

61.     The APA executed by the parties contains a forum and venue selection clause agreed to by the parties, which states:

> **7.11 Submission to Jurisdiction.** Each of the parties hereto irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement or for recognition and enforcement of any judgment in respect hereof brought by any other party or its successors or assigns may be brought and determined by a state or federal court of appropriate jurisdiction in New Castle County Delaware, and each of the parties hereto hereby irrevocably submits to the exclusive jurisdiction of the aforesaid courts for itself and with respect to its property, generally and unconditionally, with regard to any such action or proceeding arising out of or relating to this Agreement and the transactions contemplated hereby (and agrees

not to commence any action, suit or proceeding relating thereto except in such courts).

## FACTS

### I.     Overview of Black & Veatch Special Projects Corp. and its Environmental Services Business Unit, Project Evergreen

62.     BVSPC is a division and wholly owned subsidiary of Black & Veatch Holding Company.

63.     BVSPC's stated purpose is "[t]o provide architectural, engineering, and waste management services, including advisory, consulting and planning services."

64.     Project Evergreen, which Versar Environmental purchased from BVSPC, was BVSPC's full-service, environmental business unit specializing in investigation, assessment, design, remediation, and operations and maintenance for government clients across the United States.

65.     When Versar Environmental purchased Project Evergreen, Project Evergreen held numerous federal contracts, including the contract for the "Chem Fab Superfund Site."

66.     Project Evergreen also, purportedly, had numerous additional contracts, specifically from USACE Kansas City, for which it was supposedly eligible and expected to bid.

### II.     Overview and History of Chem Fab and the Chem Fab Project, the Largest Project Owned by Project Evergreen

67.     As of the date of the APA, Chem Fab was Project Evergreen's largest project.

68.     The Chem Fab Superfund Site ("the Site") is located at and around 300-360 North Broad Street, Doylestown, Pennsylvania 18901.

69.     From the mid-1960s to the late 1970s, a company called Chem Fab, Inc. operated an electroplating and metal etching facility at the present-day Chem Fab Superfund Site.

70.     Chem Fab, Inc. also stored and disposed of various processing chemicals at the Site.

71.     In or around March 1986, the EPA completed an initial assessment of the Chem Fab Superfund Site and ultimately identified various hazardous chemicals in the groundwater at the Site.

72.     In 2008, the EPA added the Site to its Superfund program's National Priorities List, making it eligible for federal cleanup funding.[7]

73.     On or about June 12, 2019, the EPA issued a Request for Information ("RFI") to qualified contract holders[8], including BVSPC, to construct and operate a groundwater extraction treatment system ("GETS") as part of cleanup at the Chem Fab Superfund Site.

74.     The scope of work under the RFI was to construct a GETS at the Site, which included various piping and a treatment building, along with other supporting components.

75.     On or around July 29, 2020, after BVSPC had months to study Chem Fab and the scope of work, the EPA issued a Request for Offer ("RFO").[9]

76.     Like in the RFI, the scope of work in the RFO was, generally, to construct a GETS to extract, and prevent the further migration of, contaminated groundwater at the Site, a treatment building, other supporting components, and to monitor the groundwater at the Site.

77.     The RFO also contained numerous personnel requirements, including designating a full-time, on-site, qualified Construction Quality Systems Manager ("CQSM") to monitor work at the Site and to ensure quality control.

---

[7] In 1980, Congress established the Comprehensive Environmental Response, Compensation, and Liability Act, informally known as Superfund, which gives the EPA authority to clean up contaminated and hazardous waste sites.

[8] "Qualified contract holders" refers to EPA approved Remediation Environmental Services contractors (confirm accuracy).

[9] At a superfund site, the EPA is generally responsible for the cleanup of the site, with USACE providing technical support.

78.     The initial schedule for Chem Fab was as follows: (1) a Base Period lasting 14 months (4 months of pre-construction activities, 7 months of construction, and 3 months of startup and post-construction activities); (2) Option Period No. 1 lasting 16 months (operations and maintenance); (3) Option Period No. 2 lasting 12 months (operations and maintenance); and (4) Option Period No. 3 lasting 12 months (operations and maintenance).

## III.    EPA Decision to Award Chem Fab to BVSPC

79.     As a uniquely complex, first-of-its-kind environmental remediation construction job, and because BVSPC had only previously supported minor environmental remediation construction activities, BVSPC personnel doubted that BVSPC could win, let alone successfully complete, the scope of work on Chem Fab.

80.     As BVSPC Program Manager Robert Gamble wrote on March 5, 2020: "The bulk of the Chem-Fab opportunity is specialty construction trades and system fabrication.  These are services that we cannot self-perform on a sustainable basis."  *See* Robert Gamble March 5, 2020 Email, attached as Exhibit 1.

81.     BVSPC also knew, because of its inexperience and inability to self-perform the work, that it would need a qualified, experienced subcontractor to successfully complete the work.

82.     Nevertheless, BVSPC bid for Chem Fab.

83.     BVSPC's bid for Chem Fab was as follows:

    a.  Total Offer for Base Period: $5,803,055.82

    b.  Total Offer for Option Period 1: $1,256,631.94

    c.  Total Offer for Option Period 2: $921,266.24

    d.  Total Offer for Option Period 3: $1,127,377.08

84.     This dollar amount included successful mobilization, construction, and post-

construction operations and monitoring at the Site.

85.     BVSPC also identified the following key personnel for Chem Fab: (1) Project Manager, Edward Hicks, PE, PMP; Project Superintendent, John Weir[10]; CQSM Romiro Ojeda; and (4) Remedy Operator, Kenneth Fulford.

86.     BVSPC's bid for Chem Fab was substantially lower than the bids of its competition because for BVSPC and, specifically, for Project Evergreen, Chem Fab was work it needed to "win at all costs."

87.     Ultimately, the EPA awarded Chem Fab to BVSPC, and, on October 9, 2020, it issued a Notice to Proceed.

## IV.     BVSPC's Hiring of PRM as its Main Subcontractor for Chem Fab

88.     Shortly after winning Chem Fab, BVSPC began soliciting bids from potential subcontractors—one of which was PRM.

89.     After receiving bids from numerous candidates, BVSPC decided to subcontract with PRM, and it submitted a Request for Consent to the EPA.

90.     In its Request, BVSPC represented that PRM was an experienced, qualified contractor that could complete the required work on Chem Fab correctly and in a timely manner.

91.     The EPA approved BVSPC's request to hire PRM.

## V.     BVSPC's Continued Failure to Abide by its Contractual Obligations and Critical, Undisclosed Delays to the Project Schedule

92.     Almost immediately after the EPA approved PRM and directed BVSPC to proceed on Chem Fab, significant, material issues developed with the project—issues that BVSPC did not disclose to Versar Environmental during due diligence.

---

[10] On or around March 11, 2021, BVSPC's Jan Dekker replaced John Weir as Project Superintendent.

**A.    USACE Serial Letter No. 1 to BVSPC for BVSPC's Failure to Provide a Qualified, Full-Time Construction Quality Systems Manager**

93.    Conflict developed between BVSPC and the Government months before BVSPC even mobilized on Chem Fab.

94.    On December 11, 2020, BVSPC Project Manager Ed Hicks raised alarm bells that the "EPA keeps harassing us" about staffing for Chem Fab.  He added that "we're going to have some problems."  *See* Ed Hicks December 11, 2020 Email, attached as Exhibit 2.

95.    Hicks also expressed concern, long before any mobilization or construction even began, about the EPA issuing a "stop work order" on Chem Fab.  *See* Ex. 2.

96.    Importantly, Hicks was so concerned about Chem Fab that he wanted to "get legal involved" to "push back" against the EPA and to provide guidance on how to address other disputes that may arise on the project.  Hicks' superior, Rob Gamble, approved the request to alert BVSPC legal.  *See* Ex. 2.

97.    Despite BVSPC seeking legal advice, even before commencing on-site work, to get control of Chem Fab, problems quickly began to snowball.

98.    On December 17, 2020, USACE sent BVSPC the first of several Serial Letters on the project.

99.    Serial Letter No. 1 addressed BVSPC's lack of a full-time CQSM for Chem Fab. The letter expressed the Government's concern that "[w]ithout a consistent CQSM[,] we are concerned impacts may be seen with the overall project quality."  *See* Serial Letter No. 1, attached as Exhibit 3.

100.    The Government communicated that BVSPC's lack of a qualified, full-time CQSM on Chem Fab was "unacceptable" and would result in a "poor performance evaluation" if it continued.  *See* Ex. 3.

101.    Eventually, after several weeks, BVSPC assigned a qualified, full-time CQSM,

Shante Mason, to the project.

102.    On January 12, 2021, nearly a month after BVSPC received Serial Letter No. 1,

Robert Gamble wrote to Ed Hicks about the process of designating a new CQSM:

> "Just to remove any doubt although I don't think there should be any. I have your
> back on this IDWA. We are out of options and time. Shante [Mason] is the answer.
> Scott [Olson] will have to live with the revenue loss. *We compromised our
> processes when we bid Chem Fab.  Now we (including Scott) will have to live with
> the pain*." (emphasis added).

*See* Robert Gamble January 12, 2021 Message, attached as Exhibit 4.

103.    The following day, Gamble added:

> "We need to remember how Chem-Fab came about, we *compromised our processes*
> to submit a bid and this is the *price we pay for that compromise*. Memories get short
> and selective and should not be lost. The project team is doing everything that can
> be done to minimize the impact, but facts are facts *we are one step away from a
> cure notice on Chem-Fab*." (emphasis added).

*See* Robert Gamble January 13, 2021 Email, attached as Exhibit 5.

104.    Olson responded with his concern about Chem Fab and the impact the project may

have on Project Evergreen's already poor health, stating:

> "This is really troubling, especially considering the financial health of our BU
> [business unit].  I sincerely hope that we came away bruised and battered from
> fighting and negotiating for that PGM [project gross margin] hit and that we didn't
> simply roll over due to waiting until the last minute and being in a box.  We cannot
> afford any PGM erosion on our jobs."

*See* Scott Olson January 13, 2021 Message, attached as Exhibit 6.

105.    Unfortunately, and to Versar Environmental's complete surprise, there was plenty

of "PGM erosion" to come.

**B.      USACE Serial Letter No. 3 to BVSPC for Failure to Mobilize at Chem Fab Site and BVSPC's Continued Failure to Mobilize Despite Promises in Mobilization Plan**

106.    On April 2, 2021, still before any mobilization or the beginning of any construction, the Government sent BVSPC a second Serial Letter, Serial Letter No. 3.[11]

107.    The Letter stated that there were "[s]everal issues" requiring BVSPC's "immediate attention[,]" including, but not limited to, BVSPC's failure to provide any mobilization plan, the lack of a construction support zone, and the lack of on-site office space.  *See* Serial Letter No. 3, attached as Exhibit 7.

108.    According to the Government, BVSPC had "been aware of this concern since the start of the project" but "[t]o date, with mobilization to occur the week of [April 5, 2021], none has been provided.  *This is unacceptable*."  *See* Ex. 7 (emphasis added).

109.    While BVSPC eventually provided a plan, the flaws in the plan were exposed on the first day of mobilization.

110.    According to EPA Project Manager Bob Stank, despite months of supposed planning, BVSPC "didn't make it 15 minutes" on the first day before encountering problems. Stank warned that BVSPC needed to "work to do better."  *See* Bob Stank April 6, 2021 Email, attached as Exhibit 8.

111.    In an apparent effort to mitigate continued financial and reputational losses on the project, BVSPC replaced Project Manager Ed Hicks with a new Project Manager, Chris Stone. However, unbeknownst to Versar Environmental, BVSPC's shuffling of personnel did little to help.

112.    Shortly after BVSPC named Chem Fab's new project manager, USACE inspected

---

[11] For unknown reasons (potentially a clerical error), there is no Serial Letter No. 2.

the Site.

113.    During this inspection, USACE identified numerous, serious issues, including, but not limited to, issues with fuel storage, suspect counterfeit construction materials, and inadequate construction personnel and available equipment to safely receive aggregate and material deliveries.

114.    At no time during due diligence did BVSPC disclose to Versar Environmental any information about Serial Letter No. 1, Serial Letter No. 3, the mobilization delays, the USACE inspection issues, or any other issues concerning BVSPC's inadequate performance on the Chem Fab project.

115.    Versar Environmental did not even discover Serial Letters No. 1 and No. 3 until after Closing.

116.    Notwithstanding the significant performance failures even at the commencement of the project, BVSPC continued to reflect in the finances that it disclosed to Versar Environmental an unchanged EAC.  In essence, BVSPC was forecasting costs devoid of the realities of its deficient performance on the project.

117.    BVSPC's failure to account for its material deficiencies in its financial records, including its EAC amount, is not in accordance with GAAP.

118.    Based upon due diligence, as far as Versar Environmental was aware, BVSPC mobilized and began construction on Chem Fab on time, on budget, and in compliance with the specifications and design requirements.

## VI.    BVSPC's Undisclosed Disputes with PRM

119.    In addition to the avalanche of pre-mobilization issues BVSPC encountered on Chem Fab, once construction began, BVSPC quickly encountered problems with PRM's work as well.

120.     Once again, BVSPC did not disclose to Versar Environmental during due diligence any issues related to PRM's work.

### A.     BVSPC's Undisclosed Operational Disputes and Chem Fab Site Shutdown over PRM's Deficient Work

121.     BVSPC's legion of problems with PRM included alleged "employee misconduct" by Project Manager Chris Stone against PRM Superintendent Tim Vernia, PRM's supervision of its work at the Chem Fab site, and BVSPC's lack of progress in responding to PRM's RFIs.  *See* PRM May 1, 2021 Letter to BVSPC, attached as Exhibit 9.

122.     Additionally, PRM objected to Stone's decision to shut down work on Chem Fab to address numerous deficiencies attributable to *both* PRM's and BVSPC's work.  *See* Ex. 9.

123.     According to PRM President Mel Phillips, "I need Black and Veatch to understand that Chris [Stone] is making poor decisions and they are affecting our schedule and our finances."  *See* Ex. 9.

124.     Also, PRM asserted that Chris Stone's decision to stop work was unwarranted and cost PRM $20,000.00-$30,000.00.  *See* Ex. 9.

125.     On May 2 and 3, 2021, BVSPC wrote to PRM to both address PRM's issues and to communicate additional issues of its own.  *See* May 2, 2021 Email from Chris Stone, attached as Exhibit 10; BVSPC May 3, 2021 Letter to PRM, attached as Exhibit 11.

126.     According to BVSPC, PRM's work was deficient and was negatively impacting Chem Fab because PRM did not have enough personnel on-site to complete the work, there were safety violations, and the work and supervision of PRM Superintendent Tim Vernia was inadequate.

127.     BVSPC warned PRM that "PRM does not recognize the *gravity of our current situation* on the Chem Fab Project" and that "corrective action is necessary."  *See* Ex. 11.

19

128.    These concerns were consistent with internal alarm raised within BVSPC about the status of the Chem Fab project—including that Chem Fab was a "beast" and that "the client has no patience for excuses why we aren't adhering to our plans[,]" as well as BVSPC not being "mature enough in construction to easily pull off Chem Fab."  *See* Carrie McCoy April 20, 2021 Email, attached as Exhibit 12; John Jenkins April 22, 2021 Message, attached as Exhibit 13.

129.    Inexplicably, BVSPC never informed Versar Environmental during due diligence about any of these issues with PRM.

**B.    BVSPC's Failure to Disclose Ongoing Design and Construction Issues with the Slab Foundation for the Chem Fab Treatment Building**

130.    In addition to the operational issues and BVSPC-ordered site shut down described above, starting long before mobilization or construction began, there were numerous, serious deficiencies with the design and construction of the concrete slab foundation for the Chem Fab GETS treatment building.

131.    However, once again, during due diligence, BVSPC did not disclose any issues with the slab foundation for the treatment building—leaving Versar Environmental to discover the undisclosed issues for itself after Closing.

132.    As part of its scope of work, PRM was to construct an 80' x 100' x 8" thick concrete slab foundation for the treatment building.

133.    Accordingly, PRM submitted numerous drawings and design calculations for the foundation to BVSPC for review.  BVSPC Project Engineer Anja Schlagel reviewed the submissions.

134.    From the outset, PRM's drawings and designs were deficient and failed to comply with project specifications.

135.    According to Schlagel, PRM's initial submission for the slab foundation was

"based on outdated code references that are non-spec-compliant." She added that the submission needed to be "overhauled" and "certified by a licensed professional engineer." *See* Anja Schlagel February 17, 2021 Email, attached as Exhibit 14.

136. On or around April 5, 2021, twenty-six days late according to the project schedule, PRM provided a revised submission.

137. Schlagel then provided Ed Hicks with extensive comments on PRM's revised submission, stating that, "If this would have been a submittal for DOR review, I would have *E-coded it without hesitation and rather quickly*."[12] *See* Anja Schlagel April 7, 2021 Email, attached as Exhibit 15.

138. As a result, PRM needed to submit yet another round of designs and drawings, which resulted in both delays and increased costs on the project.

139. BVSPC Project Superintendent Jan Dekker knew this when he warned BVSPC that they needed "time for our strategy on the submission *since the slab is so much more than the original bid design on the HGL PE stamped drawings*." *See* Jan Dekker April 28, 2021 Email, attached as Exhibit 16.

140. According to Schlagel, once PRM submitted additional drawings, PRM's third submission was still inadequate and incomplete because it was missing critical calculations. Also, the design of the concrete slab that PRM submitted did not account for the weight of the building.

141. These issues were so serious that, as explained above, on or around May 1, 2021, BVSPC stopped work on Chem Fab to develop a corrective action plan.

142. According to Chris Stone, the deficient foundation forced BVSPC into a "holding pattern" on Chem Fab, that BVSPC was negotiating with "a gun to [its] head", and that BVSPC

---

[12] "E Coded" refers to a USACE engineering code that means a submittal is generally not up to code or is otherwise disapproved.

was "designing on the fly." *See* Chris Stone May 5, 2021 Email, attached as Exhibit 17.

143.    However, despite the work stoppage and apparent corrective action plan, the problems and deficiencies with PRM's drawings and calculations remained unresolved.

144.    On May 10, 2021, PRM submitted to BVSPC its "final stamped drawings with the calculations for the foundation and slab." According to PRM, "[a] tremendous amount of energy went into the drawings and [calculations] as the provided plans were found to be inadequate." *See* BVSPC/PRM May 10-12, 2021 Emails, attached as Exhibit 18.

145.    However, the drawings and calculations were still deficient.

146.    Apparently, PRM merely copied a prior inadequate submission, put it on "engineering paper," and then re-submitted it to BVSPC. *See* Ex. 18.

147.    Among other issues, the proposed slab continued to be too weak to support the weight of the treatment building. According to Schlagel:

> "Some stuff was addressed, more was not, some addressed areas are *now worse than before*.... I wish they would have set up the call with the engineer, because I doubt they fully understood half of my comments based on what I am seeing here. I am not sure that one can construct this thing from these drawings, and *I still do not think that the design is adequate* considering missing load factors, questionable tank loading etc. If they don't think my comment has merit then at a bare minimum I would have expected some type of acknowledgement and justification why my comment did not apply, and I didn't see that. The[y] modified some of the drawing notes and added another sheet that contains the previously missing rebar details (even though these details are in parts not legible). However, they also now have no rebar continuing underneath the drain, *so that is where the concrete will crack and possibly separate*.
>
> I would say, we need that call to get onto the same page, because I don't think I can sign off on what I am looking at right now."

*See* Ex. 18 (emphasis added).

148.    Hicks echoed Schlagel's alarm, stating, "I went ahead and forwarded PRM's revised submittal to Anja to see if PRM had addressed her most critical comments. *They really*

*did not. I think we are flirting with disaster here*, if we don't have PRM's engineer address Anja's comments." *See* Ex. 18.

149.    Based on its review, BVSPC knew that the slab needed to be fifty percent thicker to support the weight of the treatment building. *See* BVSPC's List of Potential Claims, attached as Exhibit 19.

150.    BVSPC also knew that the slab foundation was too small. However, this too was not disclosed to Versar Environmental during due diligence. BVSPC knew or should have known that such an issue would have had a material impact on the Project loss accounting and financial disclosures required under GAAP. Versar Environmental was intentionally left in the dark and forced to discover this issue only after Closing.

151.    As Chris Stone wrote:

> "I have not been able to get to writing an RFI identifying the *undersized slab* from the HGL design. Maybe this already exists but if it does, I do not know where it is at the moment. Would you please put together the basic text needed to identify the issue and indicating there would be a cost impact primarily for increased materials in terms of concrete and rebar and a reasonable effort for our engineering costs."

*See* Chris Stone May 21, 2021 Email, attached as Exhibit 20.

152.    Clearly, based on Chris Stone's undisclosed internal email, BVSPC knew well before Closing that the slab foundation was deficient, defective, and needed a significant redesign to meet project requirements. BVSPC also knew that addressing these issues would delay the project schedule and increase the cost of completion. *See* Ex. 20.

153.    In fact, BVSPC identified these issues with the slab foundation in writing in its internal List of Potential Claims, which it shared amongst BVSPC personnel to prepare for potential litigation over Chem Fab.

154.    BVSPC's List of Potential Claims also identifies that in May 2021, BVSPC knew that the project budget was "too low", meaning that it would be impossible to complete Chem Fab to specification unless the budget were increased.

155.    Despite listing issues on Chem Fab that BVSPC believed could result in future litigation, and despite the List apparently being prepared for such litigation, BVSPC neither shared the List of Potential Claims nor any of the issues identified in it with Versar Environmental.

156.    Ultimately, on June 3, 2021, during due diligence and less than three weeks before Closing, BVSPC sent PRM a Correction of Work.  *See* BVSPC June 3, 2021 Letter to PRM, attached as Exhibit 21.

157.    The Correction of Work states "[i]t has become evident that PRM has not performed this work to an acceptable level of quality or timeliness after multiple attempts to do so and that the Project Schedule will be *further* adversely impacted if BVSPC does not intervene to correct the deficient design."  *See* Ex. 21 (emphasis added).

158.    The Correction of Work further states that "BVSPC hereby provides written notice to PRM that we are taking the immediate action of producing a new Concrete Slab Design submittal with our own engineering resources. [. . .] The cost of this intervening corrective action will be incurred by PRM, per the terms of this referenced subcontract clause."  *See* Ex. 21.

159.    Despite the Correction of Work, BVSPC personnel working on Chem Fab continued to raise alarms about PRM's work, the project, and its condition.

160.    On June 7, 2021, Anja Schlagel wrote that PRM's latest submittal was "missing the contractually required control joints to control cracking of the slab[.]"  *See* Anja Schlagel June 7, 2021 Message, attached as Exhibit 22.

161.    Schlagel also continued to raise alarm about "the concrete strength." *See* Anja Schlagel June 21, 2021 Message, attached as Exhibit 23.

162.    While BVSPC inexplicably kept Versar Environmental in the dark, BVSPC apparently informed the Government of the crisis with the slab foundation.

163.    On June 15, 2021, less than a week before Closing, the Government called a meeting with BVSPC to discuss "Potential major changes to the concrete slab design." *See* June 15, 2021 Ian Stewart Email, attached as Exhibit 24.

164.    At around the same time as the meeting, and as a last-ditch effort to potentially salvage the slab foundation, PRM requested that BVSPC allow it to hire temporary contract workers to construct the foundation.  BVSPC referred PRM's request to its legal department, which, unbeknownst to Versar Environmental, was at least the second time a Chem Fab dispute went to, or was supposed to go to, BVSPC legal.  BVSPC rejected PRM's request as an improper attempt to hire a subcontractor without BVSPC's permission.

165.    Again, during due diligence, BVSPC neither disclosed this additional legal dispute over the construction of the slab foundation for the treatment building to Versar Environmental nor did it disclose the existence of any other legal issues or issues with the foundation before Closing.

166.    Due to BVSPC's misrepresentations and intentional concealment of material facts, Versar Environmental was not aware of these significant issues and cost overruns on Chem Fab.

167.    Only after Closing did Versar Environmental obtain access to information that led to the discovery that the slab foundation was too small, too thin, and completely inadequate for the project.  Moreover, only after Closing did Versar Environmental find out what BVSPC already

knew and documented in its undisclosed List of Potential Claims, namely that there was not enough money in the budget to fix the foundation because the project budget was too low.

168.    Yet, despite knowing that the Chem Fab budget was too low, that it would cost more than initially expected to complete the project, and despite the extensive internal communications within BVSPC about these issues, the financial statements BVSPC gave to Versar Environmental during due diligence stated that the EAC was $5,688,048.00 and that this was the EAC throughout the life of the project.

169.    As made clear by BVSPC's internal, undisclosed communications about Chem Fab, BVSPC knew during due diligence that the EAC was greater than what it told Versar Environmental, but it provided false financial statements anyway, in clear violation of GAAP.

170.    All of this occurred before any construction even began on the project.

171.    As one BVSPC employee fittingly described to a colleague: "Welcome to the slow-moving disaster that we call Chem Fab."  *See* Carrie McCoy May 5, 2021 Message, attached as Exhibit 25.

## VII.    BVSPC Moves to Sell Project Evergreen to Versar Environmental

172.    While the Chem Fab "slow-moving disaster" was falling apart at the seams, with the project budget being drained before any construction even began, and with BVSPC preparing for potential litigation, BVSPC embarked on a mission to find an unwitting buyer for Project Evergreen—and to take Chem Fab off its hands.

173.    Based upon BVSPC's representations about Project Evergreen, Versar Environmental became interested in purchasing the business unit because of the unit's EPA and USACE experience.

174. On April 19, 2021, acting on behalf of Versar Environmental, Kingswood Capital Management, LLC ("KCM"), submitted a confidential, non-binding Letter of Intent for Project Evergreen. *See* April 19, 2021 Letter of Intent, attached as Exhibit 26.

175. The Letter of Intent reiterated that Versar Environmental wanted to purchase Project Evergreen specifically because of BVSPC's reputation and its work with the EPA and USACE.

176. Importantly, the Letter of Intent stated that the proposal was subject to customary closing conditions, including due diligence. *See* Ex. 26.

177. On April 26, 2021, BVSPC accepted the Letter of Intent, and the parties began due diligence.

178. During due diligence, which stretched from approximately April 28, 2021 through Closing, and includes the time during which all the Chem Fab problems discussed above occurred, BVSPC and Versar Environmental had numerous phone calls and meetings to discuss Project Evergreen, its operations, its finances, and anything else material about the business unit and its contracts.

179. This included discussing project values, schedules, and budgets, including, but not limited to, cost of goods sold, revenue, PGM, EBT, cost methodology, and accounting practices.

180. At or around the beginning of due diligence, KCM, on behalf of Versar Environmental, sent BVSPC a written Document and Information Request. *See* Versar Environmental Document and Information Request to BVSPC, attached as Exhibit 27.

181. The Document and Information Request sought, among other things: (1) a list of all threatened or pending litigation, proceedings, investigations, inquiries, claims, or disputes involving Project Evergreen; (2) all material communications to or from domestic and foreign

governmental agencies and any regulatory entity relating to Project Evergreen, its assets, or any activities; (3) copies of records relating to complaints by customers and any third parties, terminations, or non-renewals from Project Evergreen's twenty largest customers; and (4) all other materials and documents involving Project Evergreen that were material to its business and/or finances. *See* Ex. 27.

182.    BVSPC responded to Versar Environmental's Document and Information Request as follows:

a.    In response to Versar Environmental's request for information on all threatened or pending inquiries, claims, or disputes, BVSPC responded that Project Evergreen had no litigation or other legal proceedings in the last three years.

b.    In response to Versar Environmental's request for information on all material communications to or from domestic and foreign governmental agencies and any regulatory entity relating to the Company, its assets, or any activities, BVSPC referred Versar Environmental to an uploaded listing of Project Evergreen's licenses, which indicated that there were apparently no such communications.

c.    In response to Versar Environmental's request for copies of records relating to complaints by customers and any third parties, terminations, or non-renewals from Project Evergreen's twenty largest customers, BVSPC told Versar Environmental to "see uploaded files in response to business due diligence requests." There were no complaints from USACE or the EPA related to Chem Fab or any other Project Evergreen project in these files.

      d.  In response to Versar Environmental's request for any other materials or documents on any remaining material items that were material to the business of Project Evergreen, BVSPC said there were <u>none</u>.

*See* Ex. 27.

183.    The only Chem Fab issues about which BVSPC informed Versar Environmental were: (1) a hostile work environment claim brought by a PRM employee against former Chem Fab Project Superintendent Brian Dobis; (2) BVSPC's replacement of Ed Hicks with Chris Stone as Project Manager; and (3) that Chem Fab was more than a month behind schedule, which caused a revenue miss against BVSPC's forecast.

184.    However, Jay Sigman (BVSPC Associate Vice President, Managing Director-Finance, Federal Business) explained away the apparent revenue miss, telling Versar Environmental:

> PGM earnings were down $153K primarily due to variations in 2 projects (A change order on 43184 (Monitor Devices) not forecasted $53K/permanent positive improvement in earnings); Chem Fab ($199K) unfavorable variance to forecast is due to the project being more than a month behind in progress and delay in getting submittals completed and approved.  Expect to be caught up once field work is completed in October [2021] when these earnings will be realized.

*See* Jay Sigman June 14, 2021 Email, attached as Exhibit 28.

185.    BVSPC, even with its continuing duty to supplement its responses to Versar Environmental's  requests and its obligation to provide all material information, did not disclose during due diligence any other issues with Chem Fab, including issues with PRM, issues with the slab foundation, or issues with the Government, all of which are described above, all of which existed before Closing, and all of which Versar Environmental discovered after Closing because BVSPC intentionally concealed these issues.

186.    Both throughout due diligence and in the APA, BVSPC continuously represented that Chem Fab had an expected PGM of $1,279,738.00, with about $1.2 million in revenue in May 2021 alone, and that Chem Fab's EAC always remained at $5,688,048.00 for the life of the project, despite knowing full well this was not correct. *See* Project Evergreen Executed Asset Purchase Agreement, at § 6.4(f), attached as Exhibit 29.

187.    In fact, according to Black & Veatch's Marty Travers, there was "zero" chance Chem Fab would lose money, which was reinforced by Scott Olson and Todd Dudley telling Versar Environmental that the Government was happy with BVSPC's work and that there was already a verbal agreement in place with the Government for Option Period No. 1.

188.    As Versar Environmental discovered after due diligence, none of this was true. BVSPC, as stated in its undisclosed List of Potential Claims, knew the as bid project budget was "too low," that it was impossible for BVSPC to complete Chem Fab according to the initial budget, and that the Chem Fab EAC would be substantially greater than $5,688,048.00. BVSPC concealed these facts during due diligence because, as explained above, BVSPC's goal was not to complete an honest business transaction. Rather, its goal was to engage in a fraudulent scheme to offload Project Evergreen and Chem Fab, which was a money losing "dumpster fire," onto an unwitting buyer.

189.    Additionally, while BVSPC knew that Chem Fab, as both the largest Project Evergreen project and a project with the EPA and USACE, was a driving force behind the transaction for Versar Environmental, again, BVSPC stated, as icing on the cake, that there were four additional USACE Kansas City Projects, all EPA Superfund sites, in the Project Evergreen future business "pipeline," namely, Valley Park, LCP Chemical, Gowanus Canal, and Combe Fill

30

South, which could generate significant revenue and profits moving forward. As explained below, BVSPC's representations about Versar Environmental's ability to bid for these projects were false.

190.    Versar Environmental reasonably relied upon the information supplied by BVSPC during due diligence which, ultimately, proved to be materially incorrect and caused Versar Environmental to suffer substantial damages.

## VIII. Asset Purchase Agreement and Close of Sale of Project Evergreen from BVSPC to Versar Environmental

191.    Before completing the sale, BVSPC and Versar Environmental prepared the APA.

192.    The APA stated, as a condition of the sale, that "[BVSPC] has complied, and is now complying, with all applicable federal, state and local laws and regulations applicable to ownership and use of" Chem Fab. *See* Ex. 29, at § 3.9.

193.    The APA further stated that "[t]o [BVSPC]'s knowledge, no event has occurred or circumstances exist that may give rise to or serve as a basis for" any legal proceedings, including any "claim, action, suit, proceeding or governmental investigation." *See* Ex. 29, at § 3.10.

194.    BVSPC also certified, as part of executing the APA, that:

   a.   BVSPC "has not received any written notice, claim, demand letter or request for information from any Governmental Authority" (such as the EPA or USACE) indicating that Chem Fab "is or may be in material violation of" and "is not subject to any pending or threatened Action, order decree or investigation" in connection with Chem Fab;

   b.   "[N]o event has occurred, and . . . no facts, circumstances or conditions exist . . . that will, or would reasonably be expected to, give rise to a claim by a Governmental Authority for any breach or violation . . . of any Law, Contract,

purchase order, task order, delivery order, certification, representation, clause, provision or requirement.";

c. "[E]xcept as set forth in Schedule 3.22(a)(v), [BVSPC] has not received any . . . cure notice pertaining to any Government Contract[.]"; and

d. There are not currently and have not been for "the last seven years" any "outstanding material disputes" between BVSPC and the government (i.e., EPA and USACE) or with any subcontractor (i.e., PRM).

*See* Ex. 29, at §§ 3.13, 3.22(a)(ii), (v), and (c).

195. Under the APA, BVSPC warranted that the representations made to Versar Environmental were true and correct. BVSPC made that representation notwithstanding the fact that the "actual" and "constructive knowledge" of BVSPC employees Todd Dudley, Susan Granholm, Scott Olson, and Jay Sigman, among others, contradicted the truth, correctness, and veracity of those representations.

196. The knowledge of BVSPC employees concerning the material misrepresentations made to Versar Environmental would have also been known, or at least imputed, to the managing members of Black & Veatch including, but not limited to, Martin G. Travers.

197. Finally, the APA stated that BVSPC had provided Versar Environmental with GAAP compliant financial statements for all of Project Evergreen, including for Chem Fab.  *See* Ex. 29, at § 3.11.

198. As discussed above, this included BVSPC providing Versar Environmental with a GAAP compliant Profit & Loss Statement, which was attached to the APA, that disclosed, among other things, Project Evergreen's pre-Closing revenue, PGM, and EBT.  *See* Project Evergreen Profit & Loss Statement, attached as Exhibit 30.

199.    BVSPC also was required by the APA to provide Versar Environmental with a GAAP compliant Estimated Closing Balance Sheet (Schedule 1.4(c) to the APA) that disclosed, among other things, Project Evergreen's total Contract Assets.  *See* Estimated Closing Balance Sheet, attached as Exhibit 31.

200.    Specifically, BVSPC represented on its allegedly GAAP compliant Profit & Loss Statement that as of the beginning of the second fiscal quarter of 2021, on April 30, 2021, nearly two months before Closing, Project Evergreen's total revenue was $3,266,734.00, that its PGM was $690,397.00, and that its EBT was ($686,719.00).  *See* Ex. 30.

201.    BVSPC further represented, on its allegedly GAAP compliant Estimated Closing Balance Sheet, that Project Evergreen's contract assets were $1,204,957.00.  *See* Ex. 31.

202.    Based on the certifications in the APA, BVSPC's allegedly GAAP compliant financial statements, and the representations BVSPC made throughout due diligence, Versar Environmental executed the APA.

## IX.    BVSPC's Failure to Disclose, During Due Diligence, Numerous Material Issues Related to Project Evergreen

203.    Unfortunately, after Closing, Versar Environmental discovered the true state of Project Evergreen, including the myriad issues with both Chem Fab and the prospects for the USACE Kansas City Projects supposedly in the future business "pipeline."

204.    But for these misrepresentations and omissions about both Chem Fab and the USACE Kansas City Projects, Versar Environmental would never have purchased, or even considered purchasing, Project Evergreen from BVSPC.

**A.    BVSPC's Material Misrepresentations about "Pipeline" of USACE Kansas City Projects, which Versar Environmental Discovered Post-Closing**

205.    As explained above, Versar Environmental was motivated to purchase Project Evergreen, in significant part, by BVSPC's statement that Project Evergreen had four projects coming from USACE Kansas City in the "pipeline": Valley Park, LCP Chemical, Gowanus Canal, and Combe Fill South.

206.    According to BVSPC, the total planned values for these four projects were $500,000.00, $1 million, $18 million, and $25 million respectively.

207.    During due diligence, BVSPC represented that these were four projects for which Versar Environmental would be able to bid or for which BVSPC had already bid and believed it had a viable chance to win.  These representations were false.

208.    Before Closing, BVSPC had already bid on all four projects, USACE had already found that BVSPC was not "Most Highly Qualified," and, as a result, it awarded the work to another contractor.

209.    BVSPC bid for the LCP Chemical Project.  On May 31, 2021, just under a month before Closing, USACE rejected BVSPC's bid.  *See* USACE May 31, 2021 Letter, attached as Exhibit 32.

210.    BVSPC bid for the Combe Fill South project.  On April 21, 2021, over two months before Closing, USACE rejected BVSPC's bid.  *See* USACE April 21, 2021 Letter, attached as Exhibit 33.

211.    BVSPC bid for the Valley Park project.  On April 5, 2021, nearly three months before Closing, USACE rejected BVSPC's bid.  *See* USACE April 5, 2021 Letter, attached as Exhibit 34.

212.    And BVSPC bid for the Gowanus Canal project.  On June 29, 2020, nearly *two years* before Closing, USACE rejected BVSPC's bid.  *See* USACE June 29, 2020 Letter, attached as Exhibit 35.

213.    BVSPC shared none of these rejection letters with Versar Environmental.

214.    Contrary to BVSPC's assertions, the USACE Kansas City Projects, which had a combined total planned value of over $44 million, were not in any "pipeline."  BVSPC already lost these bids.  Consequently, Versar Environmental could never have been awarded this work.

215.    BVSPC misrepresented the USACE Kansas City projects in the "pipeline" as opportunities for the Project Evergreen acquisition and intentionally withheld held the fact that as of the date of the APA, BVSPC's bids for these "pipeline" projects had already been rejected.

**B.    BVSPC's Material Misrepresentations about Project Evergreen, which Versar Environmental Discovered Post-Closing**

216.    After executing the APA, Versar Environmental discovered, for the first time, that BVSPC knowingly, intentionally, and willfully fed Versar Environmental false information, including false and non-GAAP compliant financial statements, and withheld material information about Chem Fab and all of Project Evergreen.

217.    BVSPC knew about, communicated internally about, and intentionally did not inform Versar Environmental of material information about Project Evergreen, including the true, disastrous state of Project Evergreen's largest project, Chem Fab, in a fraudulent scheme to induce Versar Environmental into purchasing Chem Fab and all of Project Evergreen.

**1.    Undisclosed Operational, Performance, Scheduling, and Design Problems on Chem Fab that Existed Prior to Closing**

218.    There were numerous operational, performance, scheduling, and design issues on Chem Fab, Project Evergreen's largest project, that BVSPC knew about and intentionally failed to

disclose to Versar Environmental before Closing and that Versar Environmental could not reasonably discover on its own.

219.    As explained above, only after Closing did Versar Environmental discover that Chem Fab was significantly behind schedule, that it would cost substantial time and money to get the project back on schedule, and that, as BVSPC knew in May 2021, the project budget was "too low" to complete the project on schedule, on budget, and at the EAC of $5,688,048.00 that BVSPC disclosed during due diligence.

220.    Again, due to the cumulative effect of the undisclosed material deficiencies in BVSPC's performance of the work, completion of the project was ultimately delayed approximately two (2) years.

221.    Not only did BVSPC know, and fail to disclose, that construction had been delayed because of slow mobilization and disputes between BVSPC and PRM, but BVSPC knew, and failed to disclose, that the slab foundation for the GETS treatment building was too small, too thin, in danger of cracking and separating, and completely inadequate to meet project requirements.

222.    Unbeknownst to Versar Environmental, but as BVSPC knew weeks before Closing, the slab foundation needed to be completely reworked to support the treatment building—and it was impossible for BVSPC, because it intentionally underbid the project to win it "at all costs," to complete its scope of work on budget and to its supposed EAC.

223.    This information would have been clearly disclosed in GAAP compliant financial statements about Chem Fab, which, as Versar Environmental now knows, BVSPC failed to provide.

224.    BVSPC also failed to disclose the cure notices it sent to PRM and the multiple work stoppages that occurred because of the need to address the numerous deficiencies on Chem Fab.

225.    Not until after Closing did Versar Environmental learn that BVSPC twice needed to stop work on Chem Fab to take corrective action because of disputes with PRM.

226.    As far as Versar Environmental knew, relying upon BVSPC's disclosures and financial statements during due diligence, there had been no work stoppages or cure notices sent to PRM.

227.    Additionally, only after Closing did Versar Environmental discover the Government sent three Serial Letters to BVSPC over BVSPC's inadequate work on Chem Fab.

228.    During due diligence, BVSPC intentionally misrepresented to Versar Environmental that it had not received any cure notices from the Government on Chem Fab and it had not received any cure notices on any Project Evergreen project in the past seven years.

229.    Versar Environmental got no notice of Serial Letters No. 1 or No. 3, or any of the issues discussed within them, until after Closing.

230.    Moreover, while the EPA sent Serial Letter No. 4 on June 24, 2021, three days after Closing, the Letter addressed problems on Chem Fab that all existed prior to Closing—issues about which BVSPC was fully aware.  *See* Serial Letter No. 4, attached as Exhibit 36.

231.    Serial Letter No. 4 stated:

> "The government has concerns with the project proceeding diligently. . . . The government is concerned with the milestone slippage to date and the probable risk of future missed milestones.  The schedule update narrative report did not include a discussion of the delaying factors nor corrective action as required" by BVSPC's contract.

> "The lack of key project design related submittals is concerning for construction progress as field work on specific definable features of work cannot commence without approved submittals. This may lead to missing future milestones."  As a result, "[t]he government is not able to efficiently conduct remedial construction management duties with the provided services."  "[BVSPC] is notified that the Government considers the performance delays and other items mentioned to be endangering performance of the contract."

*See* Ex. 36.

232.    The EPA ordered that by July 9, 2021, BVSPC was to "provide a schedule narrative report detailing a description of current and anticipated problem areas or delaying factors and their impact, and an explanation of corrective actions taken or required to be taken." *See* Ex. 36.

233.    Again, BVSPC did not disclose any of the issues described in Serial Letter No. 4 to Versar Environmental before Closing, as required by the APA, because, as BVSPC well knew, Chem Fab was "headed towards a wall" because of "self-inflicted wounds" and it wanted to get out of Dodge.  *See* June 7, 2021 Message from John Jenkins, attached as Exhibit 37.

234.    Versar Environmental knew nothing of these issues and did not discover them until after Closing, when Chris Stone wrote to Versar Environmental about all the issues that he knew about as Project Manager.  *See* Chris Stone June 23, 2021 Email, attached as Exhibit 38.

235.    As a result of BVSPC's intentional misrepresentations and omissions of material information after Closing, Versar Environmental needed to stop work within days of Closing to develop a corrective action plan to save the entire Chem Fab project, and completely rework the slab foundation and project schedule at significant time and expense.

**2.    Undisclosed Financial and Legal Problems on Project Evergreen and Chem Fab that Existed Prior to Closing**

236.    BVSPC similarly failed to disclose during due diligence and before Closing significant, and material, financial and legal issues regarding Project Evergreen, including Chem Fab, that Versar Environmental also could not reasonably discover on its own.

i.    BVSPC's fraudulent misrepresentation of Project Evergreen financial information, in violation of GAAP

237.    Regarding Project Evergreen's financial condition, as previously explained, BVSPC represented to Versar Environmental during due diligence that it had provided Versar

Environmental with a GAAP compliant Profit & Loss Statement as well as an Estimated Closing Balance Sheet for Project Evergreen before Closing. However, this was false.

238.    Neither the Profit & Loss Statement nor the Estimated Closing Balance Sheet for Project Evergreen, which calculated Project Evergreen's revenue, PGM, EBT, and contract assets, were prepared in accordance with GAAP. BVSPC, including BVSPC management, knew the financial statements it provided to Versar Environmental during due diligence contained numerous material misrepresentations in violation of GAAP. But BVSPC provided them anyway.

239.    Specifically, the revenue, PGM, and EBT on the Profit & Loss Statement for Project Evergreen were all intentionally misrepresented and inflated by approximately $2.5 million each.

240.    Additionally, the Estimated Closing Balance Sheet intentionally misrepresented and overstated Project Evergreen's contract assets by approximately $2.5 million.

241.    BVSPC's purported GAAP compliant financial statements were misrepresented and overstated because, in violation of GAAP, BVSPC failed to initiate a reserve for the cost overruns on Chem Fab, thereby falsely depicting Chem Fab as a profitable project.

242.    The misrepresented and inflated revenue, PGM, and EBT on the Profit & Loss Statement, and misrepresented and inflated contract assets on the Estimated Closing Balance Sheet, which BVSPC made prior to Closing on the APA, do not account for the further future realization of additional financial losses on Chem Fab due to issues known to BVSPC prior to Close but not disclosed to Versar Environmental.

243.    BVSPC intentionally made these material financial misrepresentations to make Project Evergreen appear more profitable and valuable than was true and to cover up the litany of

operational and financial issues on Chem Fab, including its lack of profit and insufficient budget, in a fraudulent scheme to induce a sale.

ii.    BVSPC's fraudulent misrepresentation of Chem Fab
financial information, in violation of GAAP

244.    Once again, BVSPC sold Chem Fab to Versar Environmental as a project with an expected PGM of $1,279,738.00 and "zero" chance of losing money.

245.    However, BVSPC knew then, and always knew, that this was false.

246.    Specifically, BVSPC knew and failed to disclose in its allegedly GAAP compliant financial statements that its project budget, which had not changed from its initial bid, was too low, that the EAC BVSPC provided during due diligence, due to the litany of issues and delays on Chem Fab, was actually significantly greater than what BVSPC had represented, and that the increasing budget and EAC would substantially and negatively impact the "expected" PGM of $1,279,738.00 stated in the APA.

247.    Chem Fab's true EAC, as Versar Environmental now knows, is approximately $14.6 million, resulting in a substantial financial loss.

248.    Additionally, Chem Fab, because of all the undisclosed issues and delays on the project, did not even approach the "expected" $1.2 million in revenue for May 2021. In that month, Chem Fab generated less than $100,000.00 in revenue.

249.    The true PGM is ($4,460,321.03), a difference of $5,740,059.03 from BVSPC's so-called "expected" margin.

250.    BVSPC misrepresented Chem Fab's financial condition and the cost to complete the work, in violation of GAAP, even though, again, its employees who worked on the project knew well before Closing that it was a financial loser.

251.    On May 13, 2021, over a month before Closing, John Jenkins messaged Nancy Geller and said, "I will be amazed if Chem Fab breaks even."  *See* John Jenkins May 13, 2021 Message, attached as Exhibit 39.

252.    On May 18, 2021, still a month before Closing, Ed Hicks, the former Chem Fab Project Manager, emailed Chris Stone, the current Chem Fab Project Manager, writing, "I think this project is going to lose money[.]"  *See* Ed Hicks-Chris Stone May 18, 2021 "Threat of Arbitration" Email Chain, attached as Exhibit 40.

253.    Hicks believed this because "the project was behind schedule," major submittals were not done, and there were delays with PRM's work.  *See* Ex. 40.

254.    Hicks also stated that it "[a]ppears likely that there will be financial disputes between BV and PRM, and between BV and EPA. . . . It also appears likely that BV is now going to lose money on the project."  *See* Ex. 40.

255.    Chris Stone added that he was "tired of spending money to cover [PRM's] failures. [. . .] It is embarrassing."  *See* Chris Stone May 22, 2021 Email, attached as Exhibit 41.

256.    While BVSPC did not disclose any of these financial concerns to Versar Environmental, and sold instead that Chem Fab had an expected PGM of $1,279,738.00 with "zero" chance of losing money, BVSPC management knew and understood the truth about Chem Fab's financial condition because they saw Chem Fab's "actual numbers."

257.    BVSPC Project Accountant Catherine Nelson communicated Chem Fab's true condition with BVSPC management, writing, just a week before Closing, "I'm pretty sure it was quite a shock when [management] saw the *actual numbers*.  I'm worried about the project review. It's not going to be pretty."  *See* Catherine Nelson June 14, 2021 Message, attached as Exhibit 42.

258.    BVSPC President Randy Castro added, after Closing, that Project Evergreen, including Chem Fab, was "not optimally positioned to profitably grow in this market." *See* Randy Castro June 22, 2021 Email, attached as Exhibit 43.

259.    All of this information about Project Evergreen's, and specifically Chem Fab's, financial peril should have been, but was not, disclosed during due diligence in GAAP compliant financial statements.

260.    Unfortunately, as far as Versar Environmental knew, based upon BVSPC's representations during due diligence and the information Versar Environmental had the chance to review, the outlook for Chem Fab and all of Project Evergreen was positive.  Versar Environmental still has not seen Chem Fab's "actual numbers."  If it had seen the "actual numbers" that BVSPC management saw before Closing, as required by GAAP, it would never have purchased Project Evergreen.

iii.    Chem Fab's undisclosed legal troubles

261.    As with Chem Fab's "actual numbers," the legal outlook was equally dire.

262.    However, this was news to Versar Environmental because BVSPC failed to share any legal concerns it had about Chem Fab—including the List of Potential Claims it shared with its own management and legal department to prepare for potential Chem Fab litigation against PRM, the Government, or both.

263.    Ed Hicks sought and received approval to share and discuss the List of Potential Claims with "BVSPC legal"—namely, Kevin Miller and BVSPC's outside legal counsel—for it to review and provide legal advice.

264.    Also, beyond the List of Potential Claims, BVSPC legal knew of additional disputes between BVSPC and PRM—specifically, PRM's rejected attempt to circumvent Chem Fab

subcontracting requirements by hiring temporary laborers to salvage the slab foundation. This too was never disclosed.

265.    Despite BVSPC hiding the true, disastrous condition of Chem Fab, again, the people who worked on the project knew its true state, writing that the project was a "dumpster fire," that BVSPC management was "misrepresenting things" or was "out of touch," that Chem Fab was "a big fat looser (sic)," that BVSPC told Versar Environmental "some tall tales," and that Versar Environmental needed to get "the attorneys involved" to send a "clear message" to BVSPC about Chem Fab.  *See* BVSPC Employee Post-Closing Messages, attached as Exhibit 44.

266.    After-the-fact, Randy Castro stated, in an email to Scott Olson, that BVSPC had "serious performance issues" on Chem Fab about which Olson, and BVSPC, knew, adding that "[t]he lack of communication on this project [was] appalling."  *See* Randy Castro June 25, 2021 Email, attached as Exhibit 45.

267.    However, by that point, the damage was done.

268.    Again, Versar Environmental reasonably trusted BVSPC, a sophisticated, experienced government contractor, to provide trustworthy, accurate information during the due diligence process.

269.    It is now clear that it did not—and that this was BVSPC's scheme to offload the "dumpster fire" that was Chem Fab onto an unwitting, unsuspecting buyer that would not have purchased the project but for BVSPC's misrepresentations.

## COUNT I: FRAUD

270.    Versar Environmental incorporates Paragraphs 1 through 269 as if set forth fully herein.[13]

271.    Versar Environmental has satisfied all conditions precedent to bringing this action or such conditions have otherwise been waived.[14]

272.    BVSPC knowingly and repeatedly made repeated false representations of material fact, and intentionally omitted material facts, that it had a duty to disclose during due diligence and in advance of Versar Environmental purchasing BVSPC's Environmental Business Unit, named Project Evergreen.

273.    BVSPC's intentional false representations and omissions of material fact involved the operational, financial, and legal condition and status of Project Evergreen, including Chem Fab.

274.    In connection with the sale of Chem Fab, and before the execution of the June 21, 2021 APA to finalize the sale, BVSPC grossly misrepresented or otherwise intentionally failed to disclose to Versar Environmental:

    a.    That Chem Fab was several months behind schedule;

    b.    That BVSPC's budget for Chem Fab was too low to complete the work, including the substantial reworking of the slab foundation that BVSPC knew

---

[13] At this time, Versar Environmental is not alleging that BVSPC's false representations and omissions of material fact regarding the USACE Kansas City projects in the "pipeline" as opportunities for the Project Evergreen are grounds upon which Versar Environmental asserts to establish the instant fraud claim.

[14] On June 22, 2022, pursuant to Section 6.4(c) of the parties' Asset Purchase Agreement, Versar Environmental sent the required written notice to BVSPC of the facts and allegations described in this Complaint as a pre-requisite to filing this lawsuit.

was deficient and non-compliant with specifications, and that BVSPC intentionally underbid on Chem Fab in a "win at all costs" strategy;

c.  The existence of BVSPC's disputes with PRM, its main subcontractor on Chem Fab, including the fact that BVSPC sent PRM multiple cure notices and stopped work multiple times on Chem Fab to create corrective action plans to fix PRM's work;

d.  That the slab foundation design for the Chem Fab GETS treatment building needed to be completely reworked because the foundation was too small and too thin to support the treatment building, it was in danger of cracking, and it otherwise failed to comply with project specifications and requirements set by the Government;

e.  BVSPC's knowledge of and preparation for potential litigation against PRM and the Government, which included preparing a List of Potential Claims, which was shared among BVSPC personnel;

f.  The existence of multiple Serial Letters from the Government to BVSPC in which the Government stated that BVSPC's work on the project was inadequate and "unacceptable";

g.  The existence of a verbal agreement between BVSPC and the EPA for the EPA to trigger Option Period No. 1 for Chem Fab, which was worth $1.3 million;

h.  Project Evergreen's true revenue, PGM, and EBT on GAAP compliant financial statements, as represented before Closing;

i.  Chem Fab's true revenue, its PGM, and the expected cost to complete the project, all in violation of GAAP; and

j.   There were "actual numbers" showing Chem Fab's true financial condition, which contradicted the financial information BVSPC gave to Versar Environmental during due diligence—again in violation of GAAP.

275.   BVSPC falsely represented and/or failed to disclose all of this material information to Versar Environmental prior to Closing on June 21, 2021.

276.   BVSPC made these gross misrepresentations and omissions in a fraudulent scheme with the intent, and for the purpose, of inducing Versar Environmental into executing the APA to purchase Project Evergreen under false pretenses and with materially incomplete and inaccurate information.

277.   Versar Environmental justifiably acted in reliance upon BVSPC's representations, believing they were truthful, and that all material information had been disclosed, when it signed the APA to purchase Project Evergreen.

278.   Versar Environmental only discovered BVSPC's gross misrepresentations and omissions of material information after executing the APA and after BVSPC had already defrauded Versar Environmental into purchasing Project Evergreen.

279.   Versar Environmental suffered substantial injury as a result of BVSPC's fraudulent misrepresentations and omissions because, but for BVSPC's representations during due diligence and before Closing, it would not have purchased Project Evergreen.

280.   As a direct and proximate result of BVSPC's fraudulent scheme and conduct, Versar Environmental has sustained damages in the form of the additional and unanticipated substantial cost overruns and cost of capital expenses related to the completion of Chem Fab in an amount to be determined at trial, but no less than $5.9 million.

281.   As a direct and proximate result of BVSPC's fraudulent scheme and conduct, Versar Environmental has sustained damages in the form of the lost enterprise value associated with the Project Evergreen acquisition in an amount to be determined at trial.

## COUNT II: INDEMNIFICATION AND BREACH OF CONTRACT
### (Pled in the alternative)

282.   Versar Environmental realleges and incorporates Paragraphs 1 through 269 as if set forth fully herein.

283.   Versar Environmental has satisfied all conditions precedent to bringing this action or such conditions have otherwise been waived.

### A.    Indemnification for Breach of Representations and Warranties

284.   BVSPC warranted to Versar Environmental that the Representations and Warranties contained in Article 3 of the APA were true and correct as of closing.

285.   BVSPC is required under Article 6 of the APA to indemnify Versar Environmental from "any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement." APA, Article 6 Indemnification, § 6.2(a).

286.   BVSPC, however, breached numerous Representations and Warranties by providing inaccurate and false information including, but not limited to, the following:

a.   Section 3.11 Financial Statements

b.   Section 3.22 Government Contracts subparts (a) (ii), (iii) (iv) and (v); and, (c)

### B.    Breach of the APA Concerning the Purchase Price Adjustment

287.   Under APA, Article 1 Purchase and Sale, adjustments were to be made to the Purchase Price of Project Evergreen following Closing based on the difference in value between Project Evergreen's Closing Working Capital and the Estimated Working Capital.

288.    To facilitate the Purchase Price adjustments, the APA, Section 1.4(b), required BVSPC to provide Versar Environmental with certain GAAP compliant estimated financial statements and the "supporting calculations and materials" necessary to support the basis for those estimated statements.

289.    The estimated financial statements and supporting calculations and material that BVSPC provided to Versar Environment, however, were incomplete, incorrect, and were not GAAP complaint.

290.    In particular, BVSPC's reported "net asset" values were substantially incorrect for Chem Fab, the largest of the Project Evergreen projects.

291.    Further, BVSPC failed to provide support for the recognized revenue, actual cost, the estimates to complete and the estimates at completion that were critical to Versar Environmental's ability to properly validate BVSPC's reported "net asset" values for the projects under Project Evergreen.

292.    Versar Environmental spent months including through multiple email exchanges and engaging in meetings with BVSPC in its attempt to obtain the supporting documents and information to substantiate BVSPC's reported "net asset" values.

293.    BVSPC, however, failed and refused to provide the necessary support to validate estimated "net asset" values and based on the information available to Versar Environmental, BVSPC's reported estimated net asset values and asset calculations were materially incorrect.

294.    Accordingly, BVSPC failed to satisfy its contractual obligation to provide GAAP complaint estimated financial statements and the "supporting calculations and materials" to support the basis for those statements.

295.    Notwithstanding BVSPC's failure to satisfy its contractual obligation to provide the requisite information to allow for the proper adjustment to the Purchase Price, Versar Environmental determined that based on its assessment of the financial condition of Chem Fab, the Purchase Price Adjustment under the APA required a substantial downward adjustment to the Post Closing Purchase Price, thereby requiring that BVSPC remit payment to Versar Environmental for the full amount of the appropriate Purchase Price Adjustment.

296.    Despite repeated demands by Versar Environmental, BVSPC failed and refused to consider any payment to Versar Environmental in relation to the Purchase Price Adjustment.

297.    All conditions precedent to the assertion of this claim have occurred or been performed.

298.    As a direct and proximate result of BVSPC's breach of Representations and Warranties in the APA and breach of its duties regarding the post-closing Purchase Price Adjustment, Versar Environmental has sustained damages in an amount to be proven at trial, and is entitled to indemnification as provided in the APA and damages associated with the Purchase Price Adjustment in an amount to be determined at trial.

## RELIEF REQUESTED

299.    WHEREFORE, Plaintiff Versar Environmental, LLC respectfully requests that this

Court:

      a.  Enter judgment in favor of Plaintiff Versar Environmental, LLC;

      b.  Award Plaintiff compensatory damages;

      c.  Award Plaintiff punitive damages;

      d.  Award Plaintiff indemnification damages;

      e.  Award Plaintiff its costs and reasonable attorneys' fees;

      f.  Award Plaintiff such other and further relief as this Court deems just and proper.

Dated: December 20, 2023

*/s/ Megan Ix Brison*
Michael A. Weidinger (#3330)
Megan Ix Brison (#6721)
PINCKNEY, WEIDINGER, URBAN & JOYCE LLC
2 Mill Road, Suite 204
Wilmington, Delaware 19806
Tel: (302) 504-1497
Email: mweidinger@pwujlaw.com
       mixbrison@pwujlaw.com


and

Joseph S. Guarino, Esq. (*pro hac vice to be filed*)
Owen S. Walker, Esq. (*pro hac vice to be filed*)
Brian M. O'Shea, Esq. (*pro hac vice to be filed*)
VARELA LEE METZ GUARINO, LLP
1600 Tysons Blvd., Suite 900
Tysons Corner, VA 22102
Telephone: (703) 454-0170
Email: jguarino@vlmglaw.com
      owalker@vlmglaw.com
      boshea@vlmglaw.com