IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERSAR ENVIRONMENTAL SERVICES, LLC<br><br>        Plaintiff,<br><br>    v.<br><br>BLACK & VEATCH SPECIAL PROJECTS CORP.,<br><br>        Defendant. | Civil Action No. 23-01450-RGA |

## MEMORANDUM ORDER

Plaintiff filed a complaint pleading fraud, or in the alternative, indemnification and breach of contract. (D.I. 1 at 44–49). Defendant moved to partially dismiss the claims for fraud and breach of contract. (D.I. 11). I granted Defendant's motion to dismiss and granted Plaintiff leave to amend its complaint. (D.I. 24). Plaintiff filed an amended complaint asserting the same causes of action. (D.I. 29 at 27–35).

Before me is Defendant's partial motion to dismiss Count II(B) of Plaintiff's amended complaint, which claims a breach of contract. (D.I. 30). I have considered the parties' briefing. (D.I. 31, 32, 33). For the reasons set forth below, this motion is DENIED.

### I.  BACKGROUND[1]

Defendant Black & Veatch provides "architectural, engineering, and waste management services, including advisory, consulting and planning services." (D.I. 29 ¶ 17). Plaintiff Versar purchased "Project Evergreen" from Defendant pursuant to the Asset Purchase Agreement

---

[1] I summarize the factual background in the light most favorable to Plaintiff.

1

("APA"). (*Id.* ¶¶ 18, 97). Project Evergreen was Defendant's "full-service, environmental business unit specializing in investigation, assessment, design, remediation, and operations and maintenance for government clients across the United States." (*Id.* ¶ 18). Plaintiff alleges that Defendant made misrepresentations in the APA that support a fraud claim, breached representations and warranties in the APA that entitle Plaintiff to indemnification, and breached the section of the APA concerning the Purchase Price Adjustment. (*Id.* at 27–35).

Defendant only moves to dismiss the claim for breach of contract. The APA states:

> (c) Prior to the date hereof, Seller has delivered to Buyer and attached hereto on Schedule 1.4(b): (i) an estimated balance sheet of Seller as of immediately prior to the Closing, reflecting thereon Seller's best estimate of balance sheet items of Sellers [sic] calculated in accordance with GAAP (the "Estimated Closing Balance Sheet"); (ii) the Working Capital as of the Closing, based on the Estimated Closing Balance Sheet, calculated in accordance with GAAP and the Illustrative Working Capital Example, along with supporting calculations and materials (the "Estimated Working Capital"); and (iii) the calculation of the Closing Cash Payment, along with supporting calculations and materials, based on the calculation of the foregoing amounts, in each case, without giving effect to the consummation of the transactions contemplated by this Agreement (collectively, the "Estimated Statements").

(D.I. 29-2 at 6 of 130, Ex. 1, § 1.4(c)).

> (a) Within ninety (90) days after the Closing Date, Buyer shall prepare and deliver to Seller: (A) a balance sheet of Seller as of the Closing, reflecting Buyer's good faith determination, but adjusted to take into account the actual balances as of the Closing (the "Closing Balance Sheet"); and (B) the Working Capital as of the Closing, based on the Closing Balance Sheet, calculated in accordance with GAAP and the Illustrative Working Capital Example, along with supporting calculations and materials (the "Closing Working Capital" and, together with the Closing Balance Sheet, the "Closing Statements").
>
> (b) Unless Seller delivers a Dispute Notice within thirty (30) days after receipt of the Closing Statements, the Closing Statements shall be deemed the "Final Closing Statements" and shall be binding upon the parties hereto and shall not be subject to dispute or review. If Seller disagrees with any of the Closing Statements, Seller may, within thirty (30) days after receipt thereof, notify Buyer in writing (the "Dispute Notice"), which Dispute Notice shall provide reasonable detail of the nature of each disputed item on the Closing Statements, including all supporting documentation thereto along with a dollar value of

> Seller's proposed adjustments to the Closing Statements, and Seller shall be deemed to have agreed with all other items and amounts contained in the Closing Statements that are not disputed in the Dispute Notice. Buyer and Seller shall first attempt to resolve such dispute between themselves and, if Buyer and Seller are able to resolve such dispute, the Closing Statements shall be revised to the extent necessary to reflect such resolution, and such revised statements shall be deemed the "Final Closing Statements" and shall be conclusive and binding upon the parties hereto and shall not be subject to further dispute or review. If Seller and Buyer are unable to resolve such dispute within thirty (30) days after receipt by Buyer of the Dispute Notice, Buyer and Seller shall submit those items which remain in dispute to a mutually agreeable independent regionally recognized financial consulting or public accounting firm, which shall at the time of such submission certify its independence from Buyer and Seller (the "Accountants"). . . .
>
> (c) Following the final determination of the Final Closing Statements pursuant to Section 1.5(b), the Purchase Price shall be adjusted on a dollar-for-dollar basis as follows (the absolute value of the amount of the adjustment shall be referred to herein as the "Post-Closing Purchase Price Adjustment"):
>
>     (i) Downward by the amount that the Closing Working Capital as set forth in the Final Closing Statements is less than the Estimated Working Capital; or
>
>     (ii) Upward by the amount that the Closing Working Capital as set forth in the Final Closing Statements is greater than the Estimated Working Capital.

(*Id.* at 6–7 of 130, Ex. 1, § 1.5).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Federal Rule of Civil Procedure 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.   DISCUSSION

The procedure for the Purchase Price Adjustment outlined in Section 1.5 provides, "Within 90 days after the Closing Date, [Versar] shall prepare and deliver to [Black & Veatch]" the Closing Statements. (D.I. 29-2 at 6 of 30, § 1.5(a)). The APA continues, "Unless [Black & Veatch] delivers a Dispute Notice within thirty (30) days after receipt of the Closing Statements, the Closing Statements shall be deemed the 'Final Closing Statements' and shall be binding upon the parties[.]" (*Id.* § 1.5(b)). If Defendant disagreed with the Closing Statements, it needed to

notify Plaintiff "in writing" with a "Dispute Notice" within thirty days. Defendant was "deemed to have agreed with all other items and amounts contained in the Closing Statements that [were] not disputed in the Dispute Notice." (*Id.*).

To state a claim of breach of the Purchase Price Adjustment procedure outlined in Section 1.5, Plaintiff must allege that it itself abided with the initial requirements of this provision in order to create an obligation on the part of Defendant. I addressed this issue regarding Defendant's previous motion to dismiss: "If Plaintiff wished to adjust the purchase price under Section 1.5, it needed to follow the procedure outlined in the APA and provide its own good faith determination of balances and working capital to kick off the dispute resolution process, even if it thought that Defendant's statements were not GAAP compliant as required under Section 1.4." (D.I. 24 at 18).

Plaintiff amended its complaint to include the following: "Versar complied with its contractual requirements by providing [Defendant] with timely Closing Statements, in accordance with Section 1.5." (D.I. 29 ¶ 149). Plaintiff cites in its amended complaint to Exhibits 31 and 32 as the provided "Closing Statements." (*Id.*; D.I. 29-2 at 126–30).

Defendant argues that Plaintiff "did not follow the procedures set out by the APA for a purchase price adjustment dispute." (D.I. 31 at 8). First, Defendant argues that an email demonstrates that Plaintiff's Closing Statements were not "timely." (*Id.* at 9–10). Second, Defendant argues that Plaintiff did not attach the sufficient supporting calculations and materials required by the APA. Defendant takes issue with the brevity of Plaintiff's Closing Working Capital calculations (Ex. 31) and notes that the Closing Balance Sheet (Ex. 32) was not accompanied by a "cover email or date indicating when, or if, this was provided to [Defendant]." (D.I. 31 at 10, 10 n.2). Third, Defendant argues that Plaintiff failed to submit its proposed price

5

adjustment to "a mutually agreeable independent regionally recognized financial consulting or public accounting firm," which is required by Section 1.5(b) if the parties cannot come to an agreement after Defendant submits a Dispute Notice. (*Id.* at 10; D.I. 29-2 at 7 of 130, § 1.5(b)).

Exhibits attached by a plaintiff to a complaint are appropriate to consider on a motion to dismiss. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111–12 (3d Cir. 2018). If the exhibits contradict the allegations in the complaint, "the exhibits control." *Id.* at 112.

The Closing Date of the APA was June 21, 2021. (D.I. 29-2 at 5 of 130). Exhibit 31 includes an email that accompanied Plaintiff's Closing Statements dated October 27, 2021—or 128 days after the Closing Date. (*Id.* at 127 of 130, Ex. 31). The APA required Plaintiff to send the Closing Statements within 90 days. (*Id.* at 6 of 130, § 1.5(a)). Plaintiff argues that Defendant agreed to give Plaintiff time extensions to submit its Closing Statements. (D.I. 32 at 7 n.3). Plaintiff also notes that Defendant "knowingly and voluntarily accepted Versar's Closing Statements." (*Id.* at 11). Though Plaintiff does not allege the existence of these time extensions in its complaint, the fact that the email was sent on October 27 does not in and of itself "contradict" Plaintiff's assertion that its submission was timely and in accordance with the Purchase Price Adjustment procedure in the APA. Drawing all inferences in favor of Plaintiff, I find that it is at least plausible that Plaintiff's Closing Statements were "timely."

On the question of the sufficiency of Plaintiff's Closing Statements or lack of supporting documentation for the balance sheet, a motion to dismiss is not the appropriate vehicle through which to raise these factual disputes.

Regarding Defendant's argument that Plaintiff failed to seek out an independent accountant, based solely on the complaint, it is not clear that Plaintiff needed to do so. Plaintiff alleges it "complied with its contractual requirements by providing [Defendant] with timely

6

Closing Statements, in accordance with Section 1.5." (D.I. 29 ¶ 149). Plaintiff does not allege that it received a Dispute Notice from Defendant. And Defendant does not argue that it sent one. (*See* D.I. 31 at 9–11). Drawing all inferences in favor of Plaintiff about the sufficiency and timeliness of its Closing Statements, if Plaintiff sent Closing Statements to Defendant, Defendant had thirty days to send Plaintiff a Dispute Notice. If it did not, the Closing Statements became "binding upon the parties hereto." (D.I. 29-2 at 6 of 130, § 1.5(b)). At that point, it appears Defendant would have owed Plaintiff the adjustment Plaintiff demanded without first having to submit the materials to an accountant. But Plaintiff alleges Defendant refused to pay. (D.I. 29 ¶¶ 156–57).

Based on its complaint, I find that Plaintiff has stated a claim for breach of contract. Defendant's partial motion to dismiss is DENIED.

IT IS SO ORDERED.

Entered this 9th day of September, 2025

United States District Judge