## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VERSAR ENVIRONMENTAL SERVICES, LLC

          Plaintiff,

-v-

BLACK & VEATCH SPECIAL PROJECTS CORP.,

          Defendants.

C.A. No. 23-1450-RGA

## DEFENDANT'S ANSWER TO
## SECOND AMENDED COMPLAINT AND AMENDED COUNTERCLAIM

Defendant Black & Veatch Special Projects Corp. ("BVSPC"), by and through its attorneys, hereby answers the allegations in Plaintiff Versar Environmental Services LLC's ("Versar") Second Amended Complaint, dated July 15, 2026 [D.I. 57].

## GENERAL DENIAL

Except for those allegations expressly admitted herein, BVSPC denies each and every allegation of the Amended Complaint. Except as defined herein, the defined terms of the Amended Complaint are incorporated herein by reference, but BVSPC does not concede the truthfulness or accuracy of the defined terms. To the extent that headings contained in the Amended Complaint, some of which are replicated herein for ease of reference, contain allegations of fact to which a response is required, BVSPC denies them in full.

## AMENDED COMPLAINT

The allegations in the opening paragraph and footnote 1 set forth characterizations of Plaintiff's claim to which no response is required.  To the extent a response is required, BVSPC denies the allegations in the opening paragraph.

## INTRODUCTION

1.      As to the allegations in Paragraph 1, BVSPC admits that it entered into an Asset Purchase Agreement ("APA") on June 21, 2021 to sell its Environmental Business Unit to Versar.  As to the last sentence in Paragraph 1, it purports to characterize the APA, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 1.

2.      BVSPC denies the allegations in Paragraph 2, including subparagraphs (a) through (c).

3.      BVSPC denies the allegations in Paragraph 3.

4.      BVSPC admits the allegations in Paragraph 4.

5.      BVSPC admits the allegations in Paragraph 5.

6.      BVSPC admits the allegations in Paragraph 6.

7.      BVSPC admits the allegations in Paragraph 7.

8.      Paragraph 8 describes Versar's "purpose" in further amending its claims, to which no response is required. BVSPC admits that the parties to this action are parties to a Subordinated Promissory Note, dated June 21, 2021, and with a Maturity Date of June 21, 2026 (the "Promissory Note"). BVSPC denies that the Promissory Note is unenforceable, denies that BVSPC committed fraud, and denies any remaining factual allegations in Paragraph 8.

**PARTIES**

9.      BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9.

10.     BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 10.

11.     BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11.

12.     BVSPC admits the allegations in Paragraph 12.

13.     BVSPC admits the allegations in Paragraph 13.

**JURISDICTION AND VENUE**

14.     Paragraph 14 sets forth a legal conclusion to which no response is required and purports to characterize 28 U.S.C. § 1332(a)(1), which speaks for itself.  For purposes of this action only, BVSPC does not contest jurisdiction.

15.     Paragraph 15 sets forth a legal conclusion to which no response is required and purports to characterize 28 U.S.C. § 1391(b)(2), which speaks for itself.  For purposes of this action only BVSPC does not contest venue.

16.     Paragraph 16 purports to characterize the APA, which speaks for itself.

**FACTS**

I.      **Overview of Black & Veatch Special Projects Corp. and its Environmental Business Unit, Project Evergreen**

17.     BVSPC admits the allegations in Paragraph 17.

18.     Paragraph 18 purports to quote an underlying source, which speaks for itself.

19.     BVSPC admits the allegations in Paragraph 19.

20.     BVSPC admits the allegations in Paragraph 20.

3

**II.    Overview and History of the Chem Fab Project, the Largest Project Owned by Project Evergreen.**

21.    BVSPC admits the allegations in Paragraph 21.

22.    BVSPC admis that the Chem Fab Super Fund Site was located at 300 N. Broad Street in Doylestown, Pennsylvania.

23.    BVSPC admits the allegations in Paragraph 23.

24.    BVSPC admits that the EPA issued a Request for Offer and denies the remaining allegations in Paragraph 24.

25.    Paragraph 25 characterizes two documents, the RFI and the RFO, which speak for themselves. To the extent a response is required, BVSPC denies the allegations in Paragraph 25.

26.    BVSPC admits the allegations in Paragraph 26.

27.    BVSPC admits the allegations in Paragraph 27.

28.    BVSPC admits the allegations in Paragraph 28.

**III.    BVSPC's Hiring of PRM as its Main Subcontractor for Chem Fab.**

29.    BVSPC admits that in October 2020, it issued an RFP to solicit bids from subcontractors for work on the Chem Fab project, including PRM.

30.    BVSPC admits that it received bids from four candidate firms and thereafter selected PRM for the relevant subcontract.

31.    BVSPC admits the allegations in Paragraph 31.

32.    Paragraph 32 purports to characterize BVSPC's Request for Consent, which speaks for itself.

33.    BVSPC admits the allegations in Paragraph 33.

4

**IV.**     **BVSPC's Continued Failure to Abide by its Contractual Obligations, which Caused Critical, Undisclosed Delays to the Project Schedule.**

34.     BVSPC admits that it experienced certain issues on the Chem Fab project, but otherwise denies the allegations in Paragraph 34.

35.     BVSPC admits that on December 17, 2020, before construction on Chem Fab began, the USACE sent BVSPC Serial Letter No. 1.  BVSPC otherwise denies the allegations in Paragraph 35 and footnote 4.

36.     Paragraph 36 purports to characterize "Serial Letter No. 1," which speaks for itself.

37.     Paragraph 37 purports to characterize "Serial Letter No. 1," which speaks for itself.

38.     Paragraph 38 purports to characterize "Serial Letter No. 1," which speaks for itself.

39.     BVSPC admits that on or around January 2021, it assigned Shante Mason to serve as the CQSM for Chem Fab, but otherwise denies the allegations in Paragraph 39.

40.     Paragraph 40 purports to characterize a January 12, 2021 email from Robert Gamble, which speaks for itself.

41.     Paragraph 41 purports to characterize a January 13, 2021 email from Robert Gamble, which speaks for itself.

42.     Paragraph 42 purports to characterize a January 13, 2021 email from Scott Olson, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 42.

43.     BVSPC denies the allegations in Paragraph 43.

44.     BVSPC denies the allegations in Paragraph 44.

45.     Paragraph 45 purports to characterize "Serial Letter No. 3," which speaks for itself.  As to footnote 5, BVSPC admits there was no Serial Letter No. 2.

46.     Paragraph 46 purports to characterize Serial Letter No. 3, which speaks for itself.

47.     Paragraph 47 purports to characterize Serial Letter No. 3, which speaks for itself.

48.     BVSPC admits that it provided a mobilization plan, but otherwise denies the allegations in Paragraph 48.

49.     Paragraph 49 purports to characterize an April 6, 2021 email from Bob Stank, which speaks for itself.

50.     Paragraph 50 purports to characterize Section 3.22(a)(v) of the APA, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 50.

51.     BVSPC denies the allegations in Paragraph 51.

**V.     BVSPC's List of Potential Legal Claims on Chem Fab and Undisclosed Disputes with PRM.**

52.      BVSPC admits that it encountered certain issues with its subcontractor, PRM, but otherwise denies the allegations in Paragraph 52.

53.     Paragraph 53 purports to characterize the APA, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 53.

54.     Paragraph 54 purports to characterize a May 1, 2021 letter from PRM to BVSPC, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 54.

55.     BVSPC admits that it encountered certain issues with its subcontractor, PRM, and paused work at the Chem Fab site, but otherwise denies the allegations in Paragraph 55.

56.     Paragraph 56 purports to characterize a May 1, 2021 letter from PRM to BVSPC, which speaks for itself.

57.     Paragraph 57 purports to characterize a May 2, 2021 email from Chris Stone and a May 3, 2021 letter from BVSPC, which speak for themselves.

58.     Paragraph 58 purports to characterize a May 3, 2021 letter from BVSPC, which speaks for itself.

59.     Paragraph 58 purports to characterize a May 3, 2021 letter from BVSPC, which speaks for itself.

60.     Paragraph 60 purports to characterize a May 3, 2021 letter from BVSPC, which speaks for itself.

61.     Paragraph 61 purports to characterize an April 20, 2021 email from Carrie McCoy and an April 22, 2021 email from John Jenkins, which speak for themselves.  BVSPC otherwise denies the allegations in Paragraph 61.

62.     BVSPC admits there was a dispute over the design and construction of the concrete slab meant to support the treatment building at the Chem Fab site, but otherwise denies the allegations in Paragraph 62.

63.     BVSPC admits the allegations in Paragraph 63.

64.     BVSPC admits the allegations in Paragraph 64.

65.     BVSPC admits it found deficiencies in PRM's submissions, but otherwise denies the allegations in Paragraph 65.

66.     Paragraph 66 purports to characterize a February 17, 2021 email from Anja Schlagel, which speaks for itself.

67.     BVSPC admits that on or around April 5, 2021, PRM submitted drawings for BVSPC review, but otherwise denies the allegations in Paragraph 67.

7

68. Paragraph 68 and footnote 6 purport to characterize an April 7, 2021 email from Anja Schlagel, which speaks for itself.

69. BVSPC admits that PRM was required to submit corrected drawings, but otherwise denies the allegations in Paragraph 69.

70. Paragraph 70 purports to characterize an April 28, 2021 email from Jan Dekker, which speaks for itself.

71. Paragraph 71 purports to characterize an April 28, 2021 email from Jan Dekker, which speaks for itself.

72. BVSPC admits that it paused work at the Chem Fab site, but otherwise denies the allegations in Paragraph 72.

73. Paragraph 73 purports to characterize a May 5, 2021 email from Chris Stone, which speaks for itself.

74. BVSPC admits that it encountered certain issues with its subcontractor, PRM, but otherwise denies the allegations in Paragraph 74.

75. Paragraph 75 purports to characterize numerous emails between BVSPC and PRM, which speak for themselves.

76. BVSPC admits that its engineers found problems with PRM's design work, and otherwise denies the allegations in Paragraph 76.

77. Paragraph 77 in part purports to characterize an email, which speaks for itself. BVSPC admits that its engineers found problems with PRM's design work, and otherwise denies the allegations in Paragraph 77.

78. Paragraph 78 purports to characterize a May 12, 2021 email from Anja Schlagel, which speaks for itself.

79.    Paragraph 79 purports to characterize a May 12, 2021 email from Ed Hicks, which speaks for itself.

80.    BVSPC admits that it maintained a document titled "Potential Claims and/or Disputes with EPA," which described BVSPC personnel's belief that the original design drawings in the EPA's request for bids had "under-designed" the thickness of a concrete slab to support the treatment building by approximately fifty percent. BVSPC denies the characterization of Exhibit 18 in Paragraph 80 and denies any remaining allegations. The exhibit speaks for itself

81.    Paragraph 81 purports to characterize a May 21, 2021 email from Chris Stone, which speaks for itself.

82.    Paragraph 82 purports to characterize a May 21, 2021 email from Chris Stone, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 82.

83.    Paragraph 83 purports to characterize BVSPC's "Potential Claims and/or Disputes with EPA" document, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 83.

84.    Paragraph 84 purports to characterize BVSPC's "Potential Claims and/or Disputes with EPA" document, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 84.

85.    BVSPC admits that it represented Chem Fab's expected PGM to be $1,279,738, but otherwise denies the allegations in Paragraph 85.

86.    Paragraph 86 purports to characterize a June 3, 2021 Correction of Work, which speaks for itself.

87. Paragraph 87 purports to characterize a June 3, 2021 Correction of Work, which speaks for itself.

88. Paragraph 88 purports to characterize a June 3, 2021 Correction of Work, which speaks for itself.

89. BVSPC denies the allegations in Paragraph 89.

90. Paragraph 90 purports to characterize a June 7, 2021 email from Anja Schlagel, which speaks for itself.

91. Paragraph 91 purports to characterize a June 21, 2021 email from Anja Schlagel, which speaks for itself.

92. Paragraph 92 purports to characterize the APA, which speaks for itself. BVSPC otherwise denies the allegations in Paragraph 92.

93. BVSPC denies the allegations in Paragraph 93.

94. Paragraph 94 purports to characterize a June 15, 2021 email from Ian Stewart, which speaks for itself.

95. BVSPC admits that PRM raised the possibility of hiring temporary contract workers for work on the slab foundation and that BVSPC denied such request. Paragraph 95 contains allegations concerning Versar's own knowledge, which BVSPC cannot admit or deny. BVSPC denies all remaining allegations in Paragraph 95.

96. Paragraph 96 purports to characterize a May 5, 2021 email from Carrie McCoy and the APA, both of which speaks for themselves.. BVSPC otherwise denies the allegations in Paragraph 96.

97. BVSPC denies the allegations in Paragraph 97.

VI. **Asset Purchase Agreement, BVSPC's Fraudulent Financial Statements, and Close of Sale of Project Evergreen.**

98. BVSPC admits the allegations in Paragraph 98.

99. BVSPC admits that Versar executed the Promissory Note, with a principal sum of two million dollars, and that BVSPC is the holder.

100. Paragraph 100 purports to characterize the APA, which speaks for itself.

101. Paragraph 101 purports to characterize the Promissory Note, which speaks for itself.

102. Paragraph 102 purports to characterize the APA, which speaks for itself.

103. Paragraph 103 purports to characterize the APA, which speaks for itself.

104. BVSPC admits the allegations in Paragraph 104.

105. BVSPC admits the allegation in Paragraph 105.

106. Paragraph 106 purports to characterize Project Evergreen's Profit & Loss Statement, which speaks for itself.

107. Paragraph 107 purports to characterize Project Evergreen's Estimated Closing Balance Sheet, which speaks for itself.

108. BVSPC admits that it stated that Chem Fab's expected PGM would be $1,279,738, but otherwise denies the allegations in Paragraph 108.

109. BVSPC denies the allegations in Paragraph 109.

110. BVSPC denies the allegations in Paragraph 110.

111. Paragraph 111 purports to characterize a June 14, 2021 email from Catherine Nelson, which speaks for itself.

112. BVSPC denies the allegations in Paragraph 112.

11

113.    Paragraph 113 purports to characterize the APA, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 113.

114.    BVSPC denies the allegations in Paragraph 114.

115.    BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 115 as to Versar's beliefs or motives in executing the APA.  BVSPC admits that Versar did execute the APA and purchased Project Evergreen and otherwise denies the allegations in Paragraph 115.

**VII.    Versar's Post-Closing Discovery of BVSPC's Misrepresentation and False Statements in the APA about Project Evergreen and Chem Fab.**

116.    BVSPC denies the allegations in Paragraph 116.

117.    BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 117 as to Versar's motives in purchasing Project Evergreen.  BVSPC otherwise denies the allegations in Paragraph 117.

118.    BVSPC denies the allegations in Paragraph 118.

119.    BVSPC admits that it had various disputes with PRM over its work on the Chem Fab project, but otherwise denies the allegations in Paragraph 119.

120.    BVSPC admits that it had various disputes with PRM over its work on the Chem Fab project, but otherwise denies the allegations in the first sentence of Paragraph 120.  BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 120.

121.    BVSPC admits that it had various disputes with PRM over its work on the Chem Fab project, but otherwise denies the allegations in Paragraph 121.

122.    BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the Paragraph 122 insofar as they relate to what Versar determined

12

about BVSPC's relationship with PRM.  BVSPC otherwise denies the allegations in Paragraph 122.

123.    BVSPC admits that it had various disputes with PRM over its work on the Chem Fab project, and otherwise denies the allegations in Paragraph 123.

124.    BVSPC denies the allegations in Paragraph 124.

125.    Paragraph 125 purports to characterize Serial Letter No. 4, which speaks for itself. BVSPC otherwise denies the allegations in Paragraph 125.

126.    Paragraph 126 purports to characterize Serial Letter No. 4, which speaks for itself.

127.    Paragraph 127 purports to characterize Serial Letter No. 4, which speaks for itself.

128.    Paragraph 128 purports to characterize a June 7, 2021 email from John Jenkins and the APA, which speak for themselves.  BVSPC otherwise denies the allegations in Paragraph 128.

129.    BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the Paragraph 129.

130.    Paragraph 130 purports to characterize BVSPC's "Potential Claims and/or Disputes with EPA" document, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 130.

131.    BVSPC admits that its project team raised potential disputes with its legal counsel.

132.    BVSPC denies the allegations in Paragraph 132.

133.    Paragraph 133 purports to characterize the APA, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 133.

134. BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the Paragraph 134 as to Versar's intentions in executing the APA. BVSPC otherwise denies the allegations in Paragraph 134.

135. BVSPC denies the allegations in Paragraph 135.

136. The first sentence of Paragraph 136 purports to characterize the APA, which speaks for itself. BVSPC denies the allegations in the second sentence of Paragraph 136.

137. BVSPC denies the allegations in Paragraph 137.

138. BVSPC admits that it provided financial statements to Versar, but otherwise denies the allegations in Paragraph 138.

139. BVSPC denies the allegations in Paragraph 139 and footnote 7 cited therein.

140. BVSPC denies the allegations in Paragraph 140.

141. BVSPC denies the allegations in Paragraph 141.

142. BVSPC admits that it provided true and accurate financial statements to Versar, and that it represented the financial statements as such. BVSPC otherwise denies the allegations in Paragraph 142.

143. BVSPC admits that it represented Chem Fab's expected PGM as $1,279,738, but otherwise denies the allegations in Paragraph 143.

144. BVSPC denies the allegations in Paragraph 144.

145. BVSPC admits that it truthfully represented the financial statements it disclosed were compliant with GAAP, but otherwise denies the allegations in Paragraph 145.

146. BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the Paragraph 146 as to Versar's intentions in executing the APA. BVSPC otherwise denies the allegations in Paragraph 146.

147. Paragraph 147 purports to characterize a June 25, 2021 email from Randy Castro, which speaks for itself.

148. BVSPC denies the allegations in Paragraph 148.

149. BVSPC denies the allegations in Paragraph 149.

**VIII. Versar's Post-Closing Delivery of "Closing Statements" in accordance with Article 1 of the APA.**

150. Paragraph 150 purports to characterize the APA, which speaks for itself.

151. Paragraph 151 purports to characterize the APA, which speaks for itself.

152. Paragraph 152 purports to characterize the APA, which speaks for itself.

153. BVSPC denies the allegations in Paragraph 153.

154. BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the Paragraph 154 as to the information Versar relied on in preparing any documents it alleges to be Closing Statements.  BVSPC otherwise denies the allegations in Paragraph 154.

155. BVSPC denies the allegations in Paragraph 155.

156. BVSPC denies the allegations in Paragraph 156.

157. BVSPC admits that engaged in meetings with Versar to discuss Project Evergreen's financials, but otherwise denies the allegations in Paragraph 157.

158. BVSPC denies the allegations in Paragraph 158.

159. BVSPC denies the allegations in Paragraph 159.

160. BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 160 as to Versar's assessment of Chem Fab's financial condition, but BVSPC otherwise denies the allegations in Paragraph 160.

161.    BVSPC admits that it declined to pay any purchase price adjustment to Versar, but otherwise denies the allegations in Paragraph 161.

162.    BVSPC denies the allegations in Paragraph 162.

### COUNT I: FRAUD

163.    BVSPC repeats and incorporates by reference each and every response set forth above as if set forth here in Paragraph 163.

164.    The allegations in Paragraph 164 and footnote 8 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required. To the extent a response is required, BVSPC admits that it received a "Notice of Claims" from Versar's counsel on June 22, 2022, but otherwise denies the allegations in Paragraph 164.

165.    BVSPC denies the allegations in Paragraph 165.

166.    BVSPC denies the allegations in Paragraph 166.

167.    Paragraph 167 purports to characterize the APA, which speaks for itself.

168.    BVSPC denies the allegations in Paragraph 168.

169.    Paragraph 169 purports to characterize the APA, which speaks for itself. BVSPC otherwise denies the allegations in Paragraph 169.

170.    BVSPC denies the allegations in Paragraph 170.

171.    The allegations in Paragraph 171 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required. To the extent a response is required, BVSPC denies the allegations in Paragraph 171.

172.    Paragraph 172 purports to characterize the APA, which speaks for itself.

173.    Paragraph 173 purports to characterize the APA, which speaks for itself. BVSPC otherwise denies the allegations in Paragraph 173.

174. Paragraph 174 purports to characterize Project Evergreen's Profit & Loss Statement, which speaks for itself. BVSPC otherwise denies the allegations in Paragraph 174.

175. Paragraph 175 purports to characterize BVSPC's Estimated Closing Balance Sheet, which speaks for itself. BVSPC otherwise denies the allegations in Paragraph 175.

176. BVSPC admits that it estimated the expected PGM for Chem Fab to be $1,279,738, but otherwise denies the allegations in Paragraph 176.

a. Paragraph 176(a) purports to characterize a January 12, 2021 email from Robert Gamble, which speaks for itself. BVSPC otherwise denies the allegations in Paragraph 176(a).

b. BVSPC denies the allegations in Paragraph 176(b).

c. BVSPC admits that it received certain Serial Letters from the government and otherwise denies the allegations in Paragraph 176(c).

d. BVSPC admits that it encountered certain issues with its subcontractor, PRM, but otherwise denies the allegations in Paragraph 176(d).

e. BVSPC admits there were certain issues with the concrete slab foundation for the Chem Fab treatment building, but otherwise denies the allegations in Paragraph 176(e).

f. BVSPC denies the allegations in Paragraph 176(f).

g. BVSPC denies the allegations in Paragraph 176(g).

h. Paragraph 176(h) purports to characterize a June 14, 2021 email from Catherine Nelson, which speaks for itself. BVSPC otherwise denies the allegations in Paragraph 176(h).

177. BVSPC denies the allegations in Paragraph 177.

178. BVSPC denies the allegations in Paragraph 178.

179. BVSPC denies the allegations in Paragraph 179.

180. BVSPC denies the allegations in Paragraph 180.

181. The allegations in Paragraph 181 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required.  To the extent a response is required, BVSPC denies the allegations in Paragraph 181.

182. Paragraph 182 purports to characterize the APA, which speaks for itself.

183. BVSPC admits to receiving certain Serial Letters from the government, but otherwise denies the allegations in Paragraph 183.

184. BVSPC admits to receiving Serial Letter No. 4 on June 24, 2021, but otherwise denies the allegations in Paragraph 184.

185. The allegations in Paragraph 185 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required.  To the extent a response is required, BVSPC denies the allegations in Paragraph 185.

186. Paragraph 186 purports to characterize the APA, which speaks for itself.

187. BVSPC denies the allegations in Paragraph 187.

188. Paragraph 188 purports to characterize the APA, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 188.

189. The allegations in Paragraph 189 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required.  To the extent a response is required, BVSPC denies the allegations in Paragraph 189.

190. The allegations in Paragraph 190 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required. To the extent a response is required, BVSPC denies the allegations in Paragraph 190.

191. The allegations in Paragraph 191 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required. To the extent a response is required, BVSPC denies the allegations in Paragraph 191.

<u>**COUNT II: INDEMNIFICATION AND BREACH OF CONTRACT**</u>
<u>**(Pled in the Alternative)**</u>

192. BVSPC repeats and incorporates by reference each and every response set forth above as if set forth here in Paragraph 192.

193. The allegations in Paragraph 193 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required. To the extent a response is required, BVSPC denies the allegations in Paragraph 193.

194. Paragraph 194 purports to characterize the APA, which speaks for itself.

195. Paragraph 195 purports to characterize the APA, which speaks for itself

196. BVSPC denies the allegations in Paragraph 196, including subparagraphs (a) through (c).

197. Paragraph 197 purports to characterize the APA, which speaks for itself.

198. BVSPC admits that it provided certain estimated statements to Versar, but otherwise denies the allegations in Paragraph 198.

199. BVSPC denies the allegations in Paragraph 199.

200. BVSPC denies the allegations in Paragraph 200.

201. BVSPC denies the allegations in Paragraph 201.

202.    BVSPC admits that it engaged in discussions with Versar related to its Estimated Statements, but otherwise denies the allegations in Paragraph 202.

203.    BVSPC denies the allegations in Paragraph 203.

204.    BVSPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the Paragraph 204 as to Versar's assessment of Chem Fab's financial condition, but BVSPC otherwise denies the allegations in Paragraph 204.

205.    BVSPC admits that it declined to pay any purchase price adjustment to Versar, but otherwise denies the allegations in Paragraph 205.

206.    BVSPC denies the allegations in Paragraph 206.

207.    The allegations in Paragraph 207 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required. To the extent a response is required, BVSPC denies the allegations in Paragraph 207.

## COUNT III: DECLARATORY JUDGMENT

208.    BVSPC repeats and incorporates by reference each and every response set forth above as if set forth here in Paragraph 208.

209.    The allegations in Paragraph 209 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required.  To the extent a response is required, BVSPC denies the allegations in Paragraph 209.

210.    Paragraph 210 purports to characterize the Promissory Note and the APA, which speak for themselves.

211.    BVSPC denies that it committed fraud. The remaining allegations in Paragraph 211 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is

required.  To the extent a response is required, BVSPC denies any remaining allegations in Paragraph 211.

212.    BVSPC denies the allegations in Paragraph 212.

213.    Paragraph 213 purports to characterize the APA, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 213.

214.    Paragraph 214 purports to characterize the APA, which speaks for itself.  BVSPC otherwise denies the allegations in Paragraph 214.

215.    BVSPC denies that it knowingly or intentionally made false statements with the intent to induce Versar to purchase Project Evergreen and denies that Versar could not have uncovered any alleged inaccuracies through investigation. The remaining allegations in Paragraph 215 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required.  To the extent a response is required, BVSPC denies the allegations in Paragraph 215.

216.    Paragraph 216 purports to characterize the APA, which speaks for itself.

217.    BVSPC denies the allegations in Paragraph 217.

218.    BVSPC admits that it provided financial statements for Project Evergreen to Versar in diligence. BVSPC denies the remaining allegations in Paragraph 218.

219.    BVSPC denies that it made any false representations to Versar. The remaining allegations in Paragraph 219 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required.  To the extent a response is required, BVSPC denies the allegations in Paragraph 219.

220.    Paragraph 220 purports to characterize the APA, which speaks for itself.

221.    BVSPC admits that it received letters from the government related to the Chem Fab project. BVSPC otherwise denies the allegations in Paragraph 221.

222.    The allegations in Paragraph 222 set forth legal conclusions and characterizations of Plaintiff's claims to which no response is required.  To the extent a response is required, BVSPC denies the allegations in Paragraph 222.

223.    BVSPC admits there is a controversy between Versar and BVSPC regarding Versar' s failure to satisfy its obligations under the Promissory Note. The remainder of Paragraph 223 characterizes Versar's request for relief, to which no response is required. . To the extent a response is required, BVSPC denies the remaining allegations in Paragraph 223.

224.    BVSPC denies that it made false representations to Versar and admits that the Promissory Note matured on June 21, 2026. The remainder of Paragraph 224 characterizes Versar's request for relief or sets forth legal conclusions, to which no response is required. . To the extent a response is required, BVSPC denies the remaining allegations in Paragraph 224.

225.    BVSPC admits that its interest is adverse to Versar's with respect to Versar's failure to meet its payment obligations under the Promissory Note.

226.    Paragraph 226 sets forth legal conclusions to which no response is required. To the extent a response is required, BVSPC denies the allegations in Paragraph 226.

## RELIEF REQUESTED

227.    BVSPC denies that any of the statements in Paragraph 227 constitute allegations of fact, denies Plaintiff's demands to the extent that they are, and denies that Plaintiff is entitled to any of the relief it seeks.

## DEFENSES

BVSPC asserts the following defenses and reserves the right to assert other defenses or claims when and if they become appropriate or available in this action.  By asserting the defenses herein, BVSPC does not assume the burden of proof for any issues as to which the applicable law places the burden on Plaintiff.

## FIRST DEFENSE

BVSPC asserts that, to the extent any allegation contained in the Second Amended Complaint is not expressly admitted herein, it is denied.

## SECOND DEFENSE

Versar's Second Amended Complaint, in whole or in part, fails to state a claim against BVSPC for which relief can be granted.

## THIRD DEFENSE

Versar's claims are barred because BVSPC satisfied its contractual obligations under the APA.

## FOURTH DEFENSE

The relief sought in the Second Amended Complaint is barred, in whole or in part, by Versar's failure to mitigate damages.

## FIFTH DEFENSE

The damages suffered by Versar, if any, are attributable in whole or in part to conduct by Versar or persons or entities other than BVSPC.

## SIXTH DEFENSE

The Second Amended Complaint fails to allege facts sufficient to support an award of actual, compensatory, consequential, punitive, or exemplary damages.

23

## SEVENTH DEFENSE

Versar's claims are barred, in whole or in part, because the claimed injuries were not caused by BVSPC (or its agents or employees).

## EIGHTH DEFENSE

BVSPC reserves the right to assert, and hereby give notice that it intends to rely upon, any other defense that may become available or appear during discovery proceedings or otherwise in this case and hereby reserves the right to amend its Amended Answer to assert any such defense.

## NINTH DEFENSE

Through its conduct, Versar has waived the claims in the Second Amended Complaint or has ratified any conduct it complains of through acceptance of the benefits of the APA.

## TENTH DEFENSE

Versar's indemnification and contract breach claims in the Second Amended Complaint are untimely.

## AMENDED COUNTERCLAIMS

1.    Counterclaim Plaintiff BVSPC pleads the following claims against Versar, arising from the June 21, 2021 Asset Purchase Agreement (the "APA") by and between BVSPC, as Seller[1], and Versar, as Buyer, and from the June 21, 2021 Subordinated Promissory Note (the "Promissory Note") given by Versar to BVSPC, as holder, in the principal sum of two million dollars. Versar has breached both the APA—its purchase price adjustment terms—and the Promissory Note, and BVSPC seeks damages and indemnification or costs of enforcement as provided under each agreement.

---

[1] Capitalized terms are as defined in the APA.

24

## PARTIES

2.      Counterclaim Plaintiff BVSPC is a Missouri corporation with its principal place of business located in Overland Park, Kansas.

3.      Counterclaim Defendant Versar is a Delaware limited liability company whose sole member, Versar, Inc., is a Delaware corporation with its principal place of business located in Washington, D.C.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over BVSPC's counterclaim pursuant to both 28 U.S.C. § 1367, because the counterclaim is part of the same case or controversy as Versar's claims, and 1332(a)(1), because the parties are jurisdictionally diverse and the amount in controversy exceeds $75,000.00.

5.       Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(1), because Versar is at home in Delaware, and pursuant to the parties' agreement in the APA that this Court will have jurisdiction over matters that arise from the APA.

## RELEVANT FACTS

I.      **Versar's Breach of the APA's Purchase Price Adjustment Terms**

6.      BVSPC and Versar entered the APA on June 21, 2021.  Thereby, BVSPC sold the assets of its environmental business unit, known as Project Evergreen, to Versar.

7.      At Section 1.4, the APA set the Purchase Price for the sale: Base Cash Consideration to be paid, and the Promissory Note to be delivered, both to BVSPC, along with Buyer's assumption of certain liabilities.  At closing, Versar was to pay BVSPC the Base Cash Consideration of $2 million, adjusted for the amount that Seller's estimate of working capital either exceeded or fell short of a Working Capital Target amount set by the parties at $1,300,000.00.

8.      At Section 1.5, the APA set a process for adjusting the Purchase Price shortly after closing.  Ninety days after closing, Buyer was to "prepare and deliver to Seller" a Closing Balance Sheet, "adjusted to take into account the actual balances as of the Closing," and the Buyer's own, supported calculation of the working capital at closing.  Within thirty days after receiving these Closing Statements from Buyer, Seller could dispute the calculations.  The Purchase Price Adjustment provision of the APA provides a dispute resolution mechanism if the parties do not agree on a final accounting of the balance sheet and working capital, which involves "submit[ting] those items which remain in dispute to a mutually agreeable independent regionally recognized financial consulting or public accounting firm."   Once the Closing Statements became final, either by agreement of the parties or resolution by Accountants, a Post-Closing Purchase Price Adjustment was to address any difference between the Closing Working Capital (the final, agreed-upon figure) and the Estimated Working Capital (as delivered by Seller at closing and reflected in the payment at closing).

9.      Versar did not comply with the APA's Purchase Price Adjustment provision in several material respects.

10.      Versar failed entirely to deliver a timely, supported Closing Balance Sheet and Closing Working Capital calculation.  These Closing Statements were due to BVSCP on September 19, 2021.  Versar simply did not deliver them.  Instead, *BVSPC provided* an updated working capital calculation *to Versar* on September 24, 2021.  Only after that, on September 30, 2021, did Versar finally request an extension of its APA deadline to provide Closing Statements. BVSPC agreed to extend the deadline to October 8, 2021.

26

11.    Versar again failed to meet its deadline.  It finally provided its position on the working capital at closing on October 27, 2021, almost three weeks after the agreed-upon, extended deadline.

12.    And when Versar finally stated an amount, it did so entirely without support and without providing a Closing Balance Sheet at all.  Instead, Versar sent a single page document that identified the Closing Working Capital as negative $42,437, purportedly requiring an adjustment of $576,102.00.  This statement included a note that "Closing Working Capital excludes working capital related to Chem-Fab due to unresolved project issues."

13.    The materials Versar provided, presumably intended to be its Closing Statements, did not comply with APA Section 1.5 because they were both untimely and utterly lacking support.  In part because Versar had not provided the Illustrative Working Capital Example required by the APA, BVSPC could not discern the quantitative basis for Versar's new position that working capital at closing was in fact dramatically lower than BVSPC had estimated as of closing.  And Versar's position that it would or could "exclude[] working capital related to Chem-Fab due to unresolved project issues" had no basis in the APA.

14.    Even though Versar failed to meet its APA obligations to provide timely and supported statements, BVSPC performed its own calculation of the adjusted working capital following closing.

15.    BVSPC calculated the Closing Working Capital as $755,013.00, which was $221,348.00 greater than the Estimated Working Capital.  The APA required Versar to pay BVSPC that difference.

16.    BVSPC communicated its position and the basis for it several times, including in a November 18, 2021 letter from BVSPC's President to Versar's financial advisor. This letter

27

noticed Versar of its breaches of the APA in failing to provide timely or supported financials and failing to pay BVSP pursuant to BVSPC's working capital calculation.  BVSPC's letter also advised of the basis for BVSPC's position that the Closing Working Capital required Versar to pay BVSPC an adjustment of $221,348.00.  This letter and other communications notified Versar that BVSPC disputed Versar's calculation of working capital. BVSPC's letter further notified Versar that BVSPC reserved all of its rights under the APA associated with its claim. This included BVSPC's right to indemnification for Versar's breaches.

17.    Versar refused to pay BVSPC the required adjustment.  It provided no reasonable accounting basis for its position.

## II.    Versar's Breach of the Promissory Note

18.    The APA established the Purchase Price for the sale of Project Evergreen at Section 1.4, which included, among other consideration, Versar's issuance of the Promissory Note.

19.    Under the Promissory Note, Versar, as Issuer, promised to pay BVSPC, as Holder, the principal sum of $2,000,000.00, plus any capitalized interest.  Section 1(c) of the Promissory Note provided for the Payment of Interest at a rate of 8% per annum, accruing from the date of issuance through the Maturity Date.

20.    Section 1(a) of the Promissory Note established the Maturity Date as June 21, 2026, on which date Versar was obligated to pay the outstanding $2,000,000.00 principal sum, together with all accrued and unpaid interest thereon, to BVSPC.

21.    Under the terms of the Promissory Note, nonpayment by Issuers for ten days from the date any sum is due constitutes an Event of Default. Section 5(a)(i).  During any Event of

Default, amounts owed under the Promissory Note accrue interest at a Default Rate of 11% per annum. Section 1(c)(iv).

22.     The Promissory Note provides for fees, expenses, and costs in connection with BVSPC's need to enforce its terms.  BVSPC is entitled to an aggregate amount of $100,000 of its "expenses, costs, charges, disbursements, and reasonable attorneys' fees" incurred when collecting on the obligations of the Promissory Note. Section 6.

23.     Versar has never made any payment to BVSPC under the Promissory Note, either of principal or interest, and, since the Maturity Date has passed, has thereby breached its obligations under the Promissory Note.

24.     On June 28, 2026, BVSPC sent notice by email to Versar regarding its breach of the Promissory Note.  In that correspondence, BVSPC stated that pursuant to Section 1(a) of the Promissory Note, payment of the outstanding principal and all accrued paid-in-kind interest was due on June 21, 2026, and that BVSPC had received no payment from Versar.  BVSPC advised that the total amount outstanding as of the Maturity Date—principal together with all accrued and unpaid interest—was $2,944,967.80.  BVSPC further warned Versar that, as of July 1, 2026, Versar's nonpayment would constitute an Event of Default under Section 5(a)(i) of the Promissory Note.  BVSPC demanded immediate payment and notified Versar that BVSPC was prepared to pursue all available remedies under the Promissory Note, including additional interest accruing at the Default Rate, as well as recovery of all fees, expenses, and costs incurred in connection with enforcement.

25.     On July 2, 2026, Versar acknowledged receipt of BVSPC's June 28, 2026 correspondence.  Versar confirmed its breach, stating its intention to withhold all payments under the Promissory Note.

29

26.     To date, Versar has made no payments to BVSPC under the Promissory Note—neither any prepayment of principal or interest, nor the full payment due at the Maturity Date.

## COUNTERCLAIM I: BREACH OF THE APA

27.     BVSPC incorporates by reference the allegations in Paragraph 1 through Paragraph 26 as though fully set forth herein.

28.     BVSPC and Versar are bound by the terms of the valid and enforceable APA.

29.     BVSPC materially complied with all terms of the APA, including the Purchase Price Adjustment provision at Section 1.5 and its dispute resolution mechanism.

30.     Versar did not comply with APA Section 1.5. It failed to provide timely or supported Closing Statements, which were required to include calculations of the closing balance sheet and adjusted working capital.  Versar missed all deadlines and provided conclusions without support.

31.     BVSPC nonetheless performed its own calculation of the Closing Working Capital, notified Versar of its dispute, and demanded payment.

32.     Versar further breached the APA's Purchase Price Adjustment provision by refusing to pay BVSPC the appropriate adjustment to working capital.

33.     As a result, BVSPC has suffered damages of $221,348.00—the working capital adjustment required by the APA.

## COUNTERCLAIM II: INDEMNIFICATION (BREACH OF THE APA)

34.     BVSPC incorporates by reference the allegations in Paragraph 1 through Paragraph 33 as though fully set forth herein.

35.     BVSPC and Versar are bound by the terms of the valid and enforceable APA.

30

36.     Section 6.3(b) of the APA requires Versar, the Buyer, to indemnify BVSPC, the Seller, for all Losses arising from or relating to any breach or non-fulfillment of any covenant, agreement or obligation to be performed by the Buyer pursuant to the APA.

37.     Under the APA's indemnification provisions, BVSPC is entitled to the damages caused by Versar's breaches, pleaded above, including its costs, expenses, and attorney's fees incurred in connection with addressing these breaches and enforcing its rights under the APA.

38.     BVSPC provided any APA required notice of its claims relevant to indemnification by, at least, its November 18, 2021 letter to Versar.

## COUNTERCLAIM III: BREACH OF THE PROMISSORY NOTE

39.     BVSPC incorporates by reference the allegations in Paragraph 1 through Paragraph 38 as though fully set forth herein.

40.     BVSPC and Versar are bound by the terms of the valid and enforceable Promissory Note.

41.     Under the Promissory Note, Versar promised to pay BVSPC the principal sum of $2,000,000.00, plus any capitalized interest at a rate of 8% per annum, on June 21, 2026.

42.     On June 21, 2026, Versar was obligated to pay BVSPC $2,944,967.80—the principal sum plus all accrued, paid-in-kind interest.

43.     Versar has breached the Promissory Note by failing and refusing to make the $2,944,967.80 payment, or any payment, to BVSPC.

44.     BVSPC is entitled to the full amount of unpaid principal and accrued interest, plus all interest accruing at the Default Rate from July 1, 2026. BVSPC is further entitled under the Promissory Note to collect its fees, expenses, and costs, including reasonable attorney's fees, in connection with enforcing the obligations of the Promissory Note.  COUNTERCLAIM RELIEF REQUESTED

45.    Counterclaim Plaintiff BVSPC respectfully requests that this Court:

a.   Enter judgment in favor of BVSPC dismissing Plaintiff Versar's claims and all requests for relief;

b.   Enter judgment in favor of Counterclaim Plaintiff BVSPC on its claim for breach of the APA's Purchase Price Provision;

c.   Enter judgment in favor of Counterclaim Plaintiff BVSPC on its claim for indemnification for Versar's breach of the APA;

d.   Enter judgment in favor of Counterclaim Plaintiff BVSPC on its claim for breach of the Promissory Note;

e.   Award Counterclaim Plaintiff BVSPC its damages of at least $3,166,315.80, together with pre- and post-judgment interest, costs, and reasonable attorneys' fees as provided under the APA and Promissory Note, in an amount to be proven at trial;

f.   Award Counterclaim Plaintiff BVSPC such other relief as the Court deems just and proper.

OF COUNSEL:

Andrew M. Lankler
Eric DuPont
Sarah Reeves
BAKER BOTTS, L.L.P.
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
andrew.lankler@bakerbotts.com
eric.dupont@bakerbotts.com
sarah.reeves@bakerbotts.com

/s/ Jeffrey L. Moyer
Jeffrey L. Moyer (#3309)
Brock E. Czeschin (#3938)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
(302) 651-7700
moyer@rlf.com
czeschin@rlf.com
haynes@rlf.com

Attorneys for Black & Veatch Special Projects Corp.

Dated:  August 14, 2026

33